893 F.2d 595
 Todd PATTERSON, a Minor suing by his father, Edgar PATTERSON
v.
FEDERAL BUREAU OF INVESTIGATION, John Doe, an unknown
employee of the United States Government and John
Doe Agency, an unknown agency of the
United States Government.
Appeal of Todd PATTERSON in Nos. 89-5342 and 89-5781.
 Nos. 89-5342, 89-5781.
 United States Court of Appeals,
Third Circuit.
 Argued Nov. 9, 1989.
Decided Jan. 8, 1990.
Rehearing and Rehearing In Banc Denied Feb. 7, 1990.
 
 Frank Askin (argued), Rutgers Constitutional Law, Newark, N.J., for appellant.
 Susan C. Cassell, U.S. Attorney's Office, Newark, N.J., for all appellees.
 Douglas Letter (argued), Robert E. Kopp, Dept. of Justice, Civil Div., Washington, D.C., for F.B.I.
 Before MANSMANN and GREENBERG, Circuit Judges, and GAWTHROP, District Judge.*
 OPINION OF THE COURT
 MANSMANN, Circuit Judge.
 
 
 1
 These appeals were born of the ambitious efforts of a sixth grade elementary school student who, in the lawful exercise of his constitutional rights, caused himself to be the subject of an investigation by the Federal Bureau of Investigation ("FBI"). The appeals constitute yet another illustration of the competing need for disclosure of information by government agencies and the need to prevent injury to the national security.
 
 
 2
 Todd Patterson ("Todd") appeals from the district court's orders granting summary judgment to the FBI and denying his post-trial motion filed pursuant to Federal Rule of Civil Procedure 60(b).[1] We hold that the information Todd seeks from the federal agency was properly exempt from disclosure. Therefore, we will affirm the judgment of the district court.
 
 I.
 
 3
 In 1983, Todd, then a sixth grade elementary school student, embarked on a precocious endeavor to write an encyclopedia of the world as part of a school project. Deciding that his school's resources were inadequate, Todd wrote to 169 countries requesting information. Significantly, Todd enclosed much of this correspondence in envelopes bearing the return address of Laboratory Disposable Products, a business Todd's parents operated from their home.
 
 
 4
 The flood of international correspondence engendered by the project attracted the attention of the FBI by means and methods undisclosed by the FBI. In late 1983, an FBI agent appeared unannounced at Todd's home. The agent spoke to Todd's parents concerning Todd's activities and was shown the correspondence received in response to Todd's requests. Soon after the visit, Todd contacted the FBI agent and spoke with him regarding the school project and the information requests to other countries.
 
 
 5
 As a result of the school project and the visit by the FBI agent, the FBI came to maintain a file on Todd.[2] The file contained a directive for the FBI's Newark Division to conduct an appropriate investigation of Laboratory Disposable Products in accordance with Attorney General Guidelines. Also included in the file is a memorandum, prepared on or about February 23, 1984, that changed the subject heading from "Laboratory Disposable Products" to "Todd Patterson." The memorandum contains a description of Todd's project and states "Newark indices as well as local criminal checks negative on subject" and "[i]n view of the above, Newark contemplates no further investigation in this matter." 705 F.Supp. 1033, 1037 (D.N.J.1989).
 
 
 6
 The FBI maintains that it conducted no further investigation after 1983.[3] However, a document released by the FBI dated December 5, 1985, along with five attachments not released, demonstrate that as of that date some entity of the United States Government continued to monitor Todd's activities. Todd insists that surveillance remained in effect because he continued to receive pieces of mail in damaged condition. In addition, Todd and his parents report hearing strange background noises on their telephones since 1983.
 
 
 7
 In April, 1987, Todd requested, pursuant to the Freedom of Information Act ("FOIA"), 5 U.S.C. Sec. 552 (1982), access to records the F.B.I. in Washington, D.C. might be maintaining on him. Todd was informed that the information he requested was exempt from disclosure under 5 U.S.C. Sec. 552(b)(1) and 5 U.S.C. Sec. 552a(j)(2). Todd appealed the denial of his FOIA request to the Department of Justice, Office of Information and Privacy, where the determination was upheld. Thereafter, Todd filed a second FOIA request, this time directed to the FBI's Newark field Office.[4]
 
 
 8
 In May 1988, Todd initiated a civil suit against defendants FBI, John Doe (an unknown employee of the United States Government), and John Doe Agency (an unknown agency of the United States Government). Todd sought injunctive relief, damages, and disclosure of the requested documents. The complaint presented three distinct causes of action: (1) failure to comply with FOIA; (2) violations of the Privacy Act; and (3) violations of Todd's First and Fourth Amendment rights and of 18 U.S.C. Sec. 1702 and 19 U.S.C. Sec. 482, statutes relating to the U.S. Mail.
 
 
 9
 The FBI responded initially to the complaint by offering to expunge Todd's name from its records. The offer was never accepted.[5] Thereafter, the FBI filed a motion for summary judgment on the first and second causes of action, reasserting that the requested information was exempt from disclosure. As to the third cause of action, the FBI moved to dismiss pursuant to Fed.R.Civ.P. 12(b)(2). Following oral argument on the motion and in camera review of the withheld documents, the district court granted summary judgment to the FBI on February 7, 1989, on all three causes of action.[6] 705 F.Supp. 1033 (D.N.J.1989). Todd thereafter filed a motion, pursuant to Fed.R.Civ.P. 60(b), to vacate the judgment or in the alternative to supplement the record which was denied by the district court on August 18, 1989. We have jurisdiction to review the grant of a motion for summary judgment and the denial of a Rule 60(b) motion pursuant to 28 U.S.C. Sec. 1291.
 
 II.
 A.
 
 10
 Todd challenges the procedures employed by the district court in its adjudication of the alleged FOIA violation. In particular, Todd contends that the record does not justify the district court's use of an in camera affidavit and its further in camera examination of withheld documents.
 
 
 11
 In Lame v. United States Dept. of Justice, 654 F.2d 917, 922 (3d Cir.1981), we expressly authorized the use of in camera affidavits and submissions. We noted that in the ordinary case, "a Vaughn index correlating justifications for non-disclosure with the particular portions of the documents requested will generally suffice to narrow the disputed issues and permit a reasoned disposition by the district court." Lame, at 922.[7]
 
 
 12
 However, there are cases, albeit unusual, where the preparation of a detailed Vaughn index would require an agency to disclose the very information that it seeks to withhold. Under these circumstances, we require an agency to submit a public affidavit setting forth, in as detailed terms as possible, the basis for the claimed exemption. Lame, 654 F.2d at 921. The district court must strive to make the public record as complete as possible, soliciting as much information as can be willingly released by the agency. If, however, "the agency is unable to articulate publicly the specific disclosure it fears and the specific harm that would ensue, then in camera inspection of a more detailed affidavit must be resorted to." See Ferri v. Bell, 645 F.2d 1213, 1224 (3d Cir.1981), opinion modified, 671 F.2d 769 (3d Cir.1982); Phillippi v. Central Intelligence Agency, 546 F.2d 1009, 1013 (D.C.Cir.1976). Moreover, to the extent that any public affidavits may appear sufficiently descriptive, it may nonetheless be necessary for the district court to examine the withheld documents in camera to determine whether the agency properly characterized the information as exempt. 5 U.S.C. Sec. 552(a)(4)(B); Lame, 654 F.2d at 921; Ferri, 645 F.2d at 1222; see also Phillippi, 546 F.2d at 1012 (FOIA clearly contemplates that courts will resolve fundamental issues in contested cases on the basis of in camera examination of relevant documents).
 
 
 13
 We believe the procedural events in the case sub judice are in accord with those procedures outlined above. In seeking discovery from the FBI, Todd propounded interrogatories questioning, inter alia, the internal investigatory procedures of the FBI and the identities of the persons and agencies assigned to Todd's case. The FBI provided answers to a few of the interrogatories, however, in most instances it claimed exemption from disclosure under the states military secrets privilege and 5 U.S.C. Sec. 552(b)(1) and Sec. 552(b)(7)(C) of the FOIA. In support of its claim of privilege, the FBI submitted the public affidavits of Special Agents Lieberman, Thomas, and Thorton. The purpose of the Thomas affidavit was to provide the district court with a Vaughn index for the records requested by Todd and withheld by the FBI. Lieberman's affidavit describes the withheld documents and sets forth justifications for those withholdings under the FOIA. Lastly, the Thorton affidavit states that the Patterson premises had never been the subject of electronic surveillance and the FBI was innocent of opening or intercepting any mail directed to the Pattersons.
 
 
 14
 Ostensibly, the district court found that these affidavits constituted sufficient proof of the privileged nature of the withheld information, for it was not until after oral argument on the FBI's motion for summary judgment that in camera inspection was ordered. Indeed, the district court's order directing the ex parte review indicated the following:
 
 
 15
 because certain issues were raised in oral argument that were not adequately addressed in the supporting papers, I have concluded that in camera inspection of certain withheld documents is required in order for this Court to assure itself that the FBI has acted in good faith with regard to its investigation of Todd Patterson, that the FBI complied with all relevant government regulations, and that the FBI engaged in no illegal conduct.
 
 
 16
 This in camera review was necessary with respect to only two documents.
 
 
 17
 The FBI complied with the order by submitting all of the unredacted documents at issue as well as the declaration of James Geer, the FBI Assistant Director in charge of the Intelligence Division. Geer's declaration was provided as "an explanatory affidavit that goes into more detail than the public affidavits." The FBI also filed publicly the Declaration and Claim of Privilege of Attorney General Thornburgh so as to assert formally the state secrets privilege.[8]
 
 
 18
 Thus, the public record consisted of certain redacted documents initially released by the FBI, a few answers to interrogatories, and four affidavits. Not surprisingly, these materials did not allay Todd's interest in the FBI's files. Under the circumstances, however, we believe the public submissions represent a good faith effort by the FBI to provide as much access to the information as possible. We can appreciate Todd's objections to the anomalous situation of having to defend against a motion for summary judgment without being privy to the very documents necessary for such a defense. The Court of Appeals for the D.C. Circuit, which has considered a significant number of FOIA cases, has commented on how this "lack of knowledge by the party seeing [sic] disclosure seriously distorts the traditional adversary nature of our legal system's form of dispute resolution." Vaughn, 484 F.2d at 824.[9] However, the remedy for the unfairness is an in camera examination by the trial court of the withheld documents and any supporting or explanatory affidavits. Inasmuch as the record was made as complete as possible in this instance, we hold that the proper predicates for accepting records and affidavits in camera were satisfied in this case.
 
 
 19
 Irrespective of the district court's in camera review, Todd argues that summary judgment should not have been granted because the FBI failed to sustain its burden to show the sensitive nature of its withheld documents. In reviewing the grant of summary judgment in proceedings seeking disclosure of records under the FOIA, this court's scope of review is two-fold: we must determine whether the district court had an adequate factual basis for its decision and whether its conclusion was clearly erroneous. Cuccaro v. Secretary of Labor, 770 F.2d 355 (3d Cir.1985); Lame v. United States Dept. of Justice, 767 F.2d 66 (3d Cir.1985).
 
 
 20
 The FBI invoked two exemptions in support of its denial of Todd's FOIA request. The first exemption provides that documents which are "specifically required by Executive Order to be kept secret in the interest of the national defense or foreign policy," are exempt from disclosure. 5 U.S.C. Sec. 552(b)(1)(1982). In support of its position, the FBI submitted the Thomas affidavit which identifies the relevant Executive Order in this case as being the Executive Order on National Security Information, No. 12356, 3 C.F.R. 166 (1983). Reviewing the Thomas affidavit in conjunction with Executive Order 12356, the district court found, and we agree, that the FBI adhered to the procedural requirements of the Executive Order when the withheld FOIA material was classified.
 
 
 21
 Next, the affidavit indicates that the documents sought by Todd contain information made eligible for classification by Sec. 1.3(a)(4) of the Executive Order. Particularly, Sec. 1.3(a)(4) provides that information shall be considered for classification if it concerns "intelligence activities (including special activities), or intelligence sources or methods." 3 C.F.R. 169. This section must be read in conjunction with Sec. 1.3(b):
 
 
 22
 Information that is determined to concern one or more of the categories in Section 1.3(a) shall be classified when an original classification authority also determines that its unauthorized disclosure, either by itself or in the context of other information, reasonably could be expected to cause damage to the national security.
 
 
 23
 Id.
 
 
 24
 The remainder of the affidavit includes Thomas' description of the documents, the location of the classified portions, and his assertions that the material satisfies the classification criteria of Sec. 1.3(a)(4) and ultimately presents a threat to the national security. The district court found Thomas' assertions deficient in only two respects. The district court found his references to Documents No. 4 and 5 to be unduly vague and repetitive. Upon in camera inspection of the material, however, the court was convinced that release of the withheld material reasonably could be expected to cause damage to the national security.
 
 
 25
 We conducted our own in camera review of the documents and accompanying Geer affidavit, mindful that when dealing with documents to which Sec. 552(b)(1) applies courts are expected to accord "substantial weight" to the agency's affidavit. See American Friends Serv. Com. v. Department of Defense, 831 F.2d 441, 444 (3d Cir.1987); see also S.Conf.Rep. No. 1200, 93d Cong. 2d Sess. 12 (1974), reprinted in 1974 U.S.Code Cong. & Admin.News 6267, 6290. We find that the district court's decision has an adequate factual basis and even on a plenary review we agree with it.[10]
 
 
 26
 The second exemption invoked by the FBI was Sec. 552(b)(7)(C), which exempts from disclosure:
 
 
 27
 (7) investigatory records compiled for law enforcement purposes, but only to the extent that the production of such records would...
 
 
 28
 (C) constitute an unwarranted invasion of personal privacy ...
 
 
 29
 5 U.S.C. Sec. 552(b)(7)(C).
 
 
 30
 In considering this claim, the district court was required to engage in a de novo balancing test: "weighing the public benefit which would result from the disclosure against the privacy interest and the extent to which it is invaded." Cuccaro, 770 F.2d at 359. In view of its finding that the FBI had not participated in any illegal conduct, the district court concluded that only a negligible benefit would inure to the public by releasing the names of FBI personnel. As a result of our independent examination of the documents, we find that the district court's conclusion is correct.
 
 
 31
 Todd also maintains that the blanket exemption from release of the requested documents and the Geer affidavit was overbroad, and that all segregable, non-sensitive portions of the withheld documents should have been released. Our rule in this circuit is that, in response to a FOIA request, "[a]ny reasonably segregable, non-exempt portion of a record is to be made available to the person requesting that record." Lame, 654 F.2d at 921. In this case, the FBI did release certain papers in which extensive redaction was necessary. Those documents completely withheld were simply inappropriate for partial redaction, except in one instance. The Geer affidavit contains some non-classified portions which could have been disclosed. Responding to questions propounded by this court at oral argument, the FBI admitted that the entire Geer affidavit need not have been withheld. However, the FBI explained that the non-classified parts of that document were available to Todd and disclosure would be made upon request. We are not convinced that earlier disclosure of these non-classified parts would have affected the outcome of the case. Future disclosure will at least assuage some of Todd's curiosity.[11]
 
 B.
 
 32
 Todd argues that the FBI violated his rights under the Privacy Act, 5 U.S.C. Sec. 552a(e)(7) by collecting information about his protected correspondence with foreign governments and by maintaining records of his protected activity in permanent, retrievable files indexed to his name. The FBI counters with the assertion that under Sec. 552a(e)(7) of the Act the requested records are exempt from disclosure.[12] Concluding that the records were entitled to exemption, the district court granted the FBI summary judgment on the second cause of action of Todd's complaint.
 
 
 33
 Our scope of review of the district court's determination with respect to disclosure under the Privacy Act on summary judgment is the same as that utilized initially by the district court. We must decide whether there exists a genuine issue as to any material fact in dispute, assuming resolution of any disputed fact in favor of the party opposing the motion, and determine whether the moving party is entitled to judgment as a matter of law. Cuccaro, 770 F.2d at 357.
 
 
 34
 Initially, and as a question of first impression in this circuit, we must interpret the meaning of a portion of Sec. 552a(e)(7). Section 552a(e)(7) prohibits federal agencies from maintaining records "describing how any individual exercises rights guaranteed by the First Amendment unless expressly authorized by statute or by the individual about whom the record is maintained or unless pertinent to and within the scope of an authorized law enforcement activity." 5 U.S.C. Sec. 552a(e)(7) (emphasis added). The precise meaning of the emphasized portion is not defined by the statute itself. The district court compared the decisions of other circuits which have interpreted this particular section and adopted a rule requiring agencies "to demonstrate that any and all records maintained on an individual's exercise of First Amendment rights are relevant to an authorized law enforcement activity of the agency, and that there exists a sufficient basis for the maintenance of such records." 705 F.Supp. at 1043 (emphasis in original). It is this definition that the parties now dispute. Todd argues that agencies should be made to show a "substantial relationship" between the records and the government activity. He insists that a "relevancy" standard acts to dilute his First Amendment rights.
 
 
 35
 Congress's intent, as revealed in the statute's legislative history, is for Sec. 552a(e)(7) to prevent "collection of protected information not immediately needed, about law-abiding Americans, on the off-chance that Government or the particular agency might possibly have to deal with them in the future." S.Rep. No. 1183, 93d Cong., 2d Sess., reprinted in 1974 U.S.Code Cong. & Admin.News 6916, 6971. The history also instructs:
 
 
 36
 that the kind of information about individuals which an agency seeks to gather or solicit, and the criteria for programs to investigate individuals will be judged by an official at the highest policy making level to be relevant and necessary to a statutory purpose of the agency.
 
 
 37
 1974 U.S.Code Cong. & Admin.News 6916, 6960 (emphasis added).
 
 
 38
 Only four courts of appeals have expressed an opinion as to the standard warranted when evaluating a claim under Sec. 552a(e)(7). The Court of Appeals for the Fourth Circuit has held that Section (e)(7) is violated "to the extent that the [agency] has engaged in the practice of collecting protected information, unconnected to any investigation of past, present or anticipated violations of the statutes which it is authorized to enforce ..." Clarkson v. I.R.S., 678 F.2d 1368, 1375 (11th Cir.1982), cert. denied, 481 U.S. 1031, 107 S.Ct. 1961, 95 L.Ed.2d 533 (1987). A case-by-case analysis of whether an agency's actions were pertinent to authorized law enforcement activity was adopted by the court in MacPherson v. I.R.S., 803 F.2d 479 (9th Cir.1986). Section (e)(7) was interpreted by the Sixth Circuit as allowing "investigation with respect to the exercise of first amendment rights if such investigation is relevant to an authorized criminal investigation or to an authorized intelligence or administrative one." Jabara v. Webster, 691 F.2d 272, 279 (6th Cir.1982),cert. denied 464 U.S. 863, 104 S.Ct. 193, 78 L.Ed.2d 170 (1983) (emphasis added). The Jabara standard was adopted in Nagel v. U.S. Dept. of Health, Education and Welfare, 725 F.2d 1438, 1441 n. 3 (D.C.Cir.1984).
 
 
 39
 In our view, a relevancy standard is more consistent with Congress's intent and will prove to be a more manageable standard than employing one based on ad-hoc review. The weight of authority supports a rule requiring a federal agency to establish some nexus between its files and classified activities. A burden as heavy as that suggested by Todd has never been imposed. We, therefore, hold that a federal agency defending its maintenance of records under Section (e)(7) must demonstrate that its records on an individual's exercise of First Amendment rights are relevant to an authorized law enforcement activity of the agency. Thus, the district court's interpretation of the section was legally correct.
 
 
 40
 Applying this standard to the FBI's records, especially the Geer affidavit, we are persuaded, as was the district court, that the records maintained by the FBI on Todd's exercise of First Amendment rights are relevant to an authorized law enforcement activity of the FBI. Continued maintenance of such records also will not violate any provision of the Privacy Act. Accordingly, with no issue of material fact to resolve, the district court properly entered summary judgment.
 
 C.
 
 41
 The FBI filed a motion to dismiss pursuant to Fed.R.Civ.P. 12(b)(2) as to Todd's third cause of action, arguing that in actions instituted in federal court under federal law, courts have eliminated fictitious defendants by motion. In his motion in opposition to the summary judgment motion, Todd maintained that pleading fictitious defendants was allowable until such time as the real parties in interest, who could only be identified through further discovery, could be substituted. The district court found, as a matter of fact, that the FBI and any FBI or other government employees involved in activities concerning Todd had acted in accord with all applicable statutory, regulatory, and administrative guidelines. Further, the district court held that the FBI had properly invoked the state secrets privilege in defense to Todd's interrogatories. Because these findings were made by considering matters outside the pleadings, i.e., documents submitted for in camera review, the district court converted the motion to dismiss into one for summary judgment, as is authorized for Rule 12(b)(6) motions, and entered judgment in favor of the FBI. Todd contends that in treating the Rule 12(b)(2) motion as one for summary judgment, the district court denied him the opportunity to properly defend his position on the merits. The FBI concedes procedural error but insists that it is "plainly harmless."
 
 
 42
 We have had occasion to consider the procedural distinction between a Rule 12(b)(6) motion and a Rule 12(b)(2) motion. In Time Share Vacation Club v. Atlantic Resorts, Ltd., 735 F.2d 61 (3d Cir.1984), we explained the mechanics of a Rule 12(b)(2) motion as follows:
 
 
 43
 A Rule 12(b)(2) motion, such as the motion made by the defendants here, is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits or other competent evidence. Contrary to the dissent's suggestion, therefore, at no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of in personam jurisdiction. See International Ass'n of Machinists & Aerospace Workers v. Northwest Airlines, 673 F.2d 700 (3d Cir.1982). Once the motion is made, plaintiff must respond with actual proofs, not mere allegations.
 
 
 44
 Time Share Vacation Club, 735 F.2d at 67 n. 9.
 
 
 45
 In support of its motion, the FBI submitted the Thorton, Thomas and Lieberman affidavits and its answers to interrogatories. Following oral argument on the motion, the FBI produced the Geer affidavit and the total collection of withheld documents. These materials, they contended, clearly evidenced the nonparticipation of the FBI in any mail cover activity. To the extent that the materials revealed the identities of another agency or agencies whose operations concerned Todd's mailings, the FBI asserted the state secrets privilege to prevent disclosure. Todd's case consisted of the affidavits of himself and his mother asserting that he had received damaged mail.
 
 
 46
 A careful reading of the district court's opinion suggests that the court by implication decided that an action could at least be initiated against a John Doe defendant. Such a determination, however, begs the question whether Todd could receive any further meaningful discovery, so as to ultimately identify the real parties in interest, in light of the FBI's assertion of the state secrets privilege. Finding that "a 'reasonable danger' that harm to the national interest will ensue if defendants are forced to comply with plaintiff's discovery requests," the district court held that the state secrets privilege had been properly invoked. 705 F.Supp. 1046. The district court then reasoned that if the record contained no evidence of abuse by the FBI, and the privilege applied to other information known to the FBI, then the case presented no issue of material fact and should be dismissed accordingly.
 
 
 47
 A Rule 12(b)(2) motion cannot be treated as one for summary judgment. There are situations, however, where "the question of the district court's jurisdiction [is] entwined with the ultimate question on the merits." International Ass'n of Machinists v. Northwest Airlines, 673 F.2d 700, 710 (3d Cir.1982). In such circumstances, it may be necessary for the district court "to proceed to a decision which impacts on the merits." Id.; see also Land v. Dollar, 330 U.S. 731, 739, 67 S.Ct. 1009, 1013, 91 L.Ed. 1209 (1947) (district court had jurisdiction to determine its jurisdiction by proceeding to a decision on the merits).
 
 
 48
 The facts of this case present this type of complicated review. At the time the Rule 12(b)(2) motion was filed, Todd had already received certain redacted papers, three affidavits and answers to interrogatories. After in camera review of the withheld documents, the district court concluded that Todd could not secure any further discovery. The John Doe defendants would thus remain unknown. Since the suit could not be maintained against a fictitious party, the district lacked in personam jurisdiction.
 
 
 49
 We find it insignificant that the district court treated the Rule 12(b)(2) motion as one for summary judgment and dismissed the cause of action for lack of a genuine issue of material fact.[13] Such a finding is beyond the initial and necessary inquiry of whether in personam jurisdiction actually lies. The FBI's evidence, both public and in camera materials, convinces us that (1) the FBI is not one of the John Doe defendants, and (2) the FBI is shielded from further disclosure by the state secrets privilege. Todd thus failed to sustain his burden of proof in establishing in personam jurisdiction. Accordingly, the cause of action was properly dismissed.
 
 D.
 
 50
 An order denying a motion for relief from judgment pursuant to Fed.R.Civ.P. 60 is reviewed for abuse of discretion. Lasky v. Continental Products Corp., 804 F.2d 250 (3d Cir.1986). In view of the facts of this case, we find no evidence that the district court abused its discretion in denying Todd's Rule 60(b) motion.
 
 III.
 
 51
 For the foregoing reasons, we will affirm the judgment of the district court in both appeals.
 
 
 
 *
 Honorable Robert S. Gawthrop, III, of the United States District Court for the Eastern District of Pennsylvania, sitting by designation
 
 
 [1]
 The appeals, filed separately from each order, were consolidated for disposition by order of the Clerk
 
 
 [2]
 The parties dispute the actual number of files. It is clear from the record that at least one file was created. Todd, however, insists that at least six files exist. This was also the district court's conclusion
 
 
 [3]
 Todd subsequently received an invitation from the Soviet Mission in New York to visit their facility, which he did after voluntarily contacting the FBI. He was requested to and did contact the FBI following his visit
 
 
 [4]
 FOIA requests made to the FBI are limited to files maintained at either the FBI headquarters or the individual field office where the request is made. Appellee's brief at 27
 
 
 [5]
 The FBI indicated at oral argument that the offer remained open. Todd's position, voiced by his attorney, was that he was unwilling to accept the offer without first reviewing the documents
 
 
 [6]
 Because it had considered matters outside the pleading, the district court considered the motion to dismiss the third cause of action as one for summary judgment. See infra part II.C
 
 
 [7]
 A Vaughn index is an affidavit which supplies an index of withheld documents and details the agency's justification for claiming exemption. See Vaughn v. Rosen, 484 F.2d 820 (D.C.Cir.1973), cert. denied, 415 U.S. 977, 94 S.Ct. 1564, 39 L.Ed.2d 873 (1974)
 
 
 [8]
 The state secrets privilege was first recognized in United States v. Reynolds, 345 U.S. 1, 73 S.Ct. 528, 97 L.Ed. 727 (1953). As explained by the Court,
 [i]t may be possible to satisfy the court, from all the circumstances of the case, that there is a reasonable danger that compulsion of the evidence will expose military matters which, in the interest of national security, should not be divulged. When this is the case, the occasion for the privilege is appropriate, and the court should not jeopardize the security which the privilege is meant to protect by insisting upon an examination of the evidence, even by the judge alone, in chambers.
 345 U.S. at 10, 73 S.Ct. at 533.
 
 
 [9]
 We note that notwithstanding this imbalance between the parties, the D.C. Circuit, as well as other circuits, have allowed the use of in camera affidavits in national security cases. See e.g., Molerio v. F.B.I., 749 F.2d 815 (D.C.Cir.1984); Fitzgerald v. Penthouse Intern., Ltd., 776 F.2d 1236 (4th Cir.1985); Jabara v. Webster, 691 F.2d 272, 279 (6th Cir.1982), cert. denied, 464 U.S. 863, 104 S.Ct. 193, 78 L.Ed.2d 170 (1983); and Hayden v. N.S.A., 608 F.2d 1381 (D.C.Cir.1979)
 
 
 [10]
 On the basis of our in camera review of the documents we have no hesitation in stating that there is nothing derogatory in them regarding Todd or any member of his family
 
 
 [11]
 The district court denied Todd's request to have his attorney present at the in camera proceedings. Although Todd alleges error on appeal, we find that the issue merits no further discussion
 
 
 [12]
 The FBI's counter-argument in the district court was that its central record system is exempt under Sec. 552a(j)(2). The district court rejected this contention, finding that the FBI had failed to show that its records on Todd were compiled specifically for purposes of a criminal investigation. This particular argument has been abandoned by the FBI on appeal
 
 
 [13]
 We can affirm, if the result reached by the district court is correct, even though our reasoning differs from that of the district court. See Tunnell v. Wiley, 514 F.2d 971, 975 n. 4 (3d Cir.1975)