

2008 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

9-11-2008

# Regan v. Loewenstein

Precedential or Non-Precedential: Non-Precedential

Docket No. 07-3266

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_2008

Recommended Citation

"Regan v. Loewenstein" (2008). *2008 Decisions.* Paper 543.
http://digitalcommons.law.villanova.edu/thirdcircuit_2008/543

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 2008 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

No. 07-3266

MARILOU REGAN;
FANFARE PUBLISHING, INC.,

Appellants

v.

PRINCE RUPERT LOEWENSTEIN;
THE RUPERT LOEWENSTEIN GROUP;
RUPERT LOEWENSTEIN, LTD.;
TONY KING; MICHAEL COHL;
ANTHILL TRADING, LTD.;
GRAND ENTERTAINMENT,
A DIVISION OF CONCERT
PRODUCTIONS INTERNATIONAL;
PROMOTONE, B.V.; MUSIDOR, B.V.

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(District Court No. 06-cv-00579)
District Judge: The Honorable James T. Giles

Submitted Pursuant to Third Circuit L.A.R. 34.1(a)
September 9, 2008

Before: SCIRICA, *Chief Judge*, MCKEE,
and SMITH, *Circuit Judges*

(Filed: September 11, 2008)

SMITH, *Circuit Judge*.

Marilou Regan and Fanfare Publishing, Inc. ("Plaintiffs") appeal from the District Court's order dismissing their complaint. We will affirm.

I.

Marilou Regan is a Pennsylvania citizen and a journalist who authored a fan tribute book about the Rolling Stones. Fanfare Publishing is a Pennsylvania corporation, wholly owned and operated by Regan, that has the rights to publish and distribute Regan's book. Defendant-Appellees, none of which are Pennsylvania residents or based in Pennsylvania, are individuals and corporate entities affiliated with the Rolling Stones. Plaintiffs claim that Regan obtained promises from Defendants to help her develop and market her book. Specifically, Plaintiffs claim that Defendants promised to provide: a foreword written by the Rolling Stones; material for use in the book; contacts to help with interviews and stories; photographs owned by Defendants; and marketing assistance and exclusive sales of the book at concerts, at public relations events, in a Rolling Stones catalogue, and through the Rolling Stones official fan club website. The nature and timing of these alleged promises is difficult to discern, however, due to the vagueness and inconsistency of the assertions in Plaintiffs' pleadings, affidavits, and appellate briefs. Plaintiffs claim that at some unspecified date in 1999, several of the Defendants "agreed

2

to a long term plan" regarding the development and marketing of the book. (Pls.' Second Am. Compl. ¶ 32.) Plaintiffs also allege that Michael Cohl (acting on behalf of himself, his company Concert Productions International ("CPI"), "and/or the other Defendants") agreed in early December of 2001 to market Regan's forthcoming book at concerts, in catalogues, and on the fan club website. (Pls.' Second Am. Compl. ¶ 37–38.)

According to Plaintiffs, on January 28, 2002,[1] Tony King (on behalf of Prince Rupert Loewenstein, who was then the Rolling Stones' business manager, and Rupert Loewenstein, Ltd.) withdrew support for Regan's book and demanded that Regan return all materials that they had provided. (Pls.' Second Am. Compl. ¶ 43.) Their alleged motive for this decision was their desire to promote a book written by Dora Loewenstein,[2] daughter of Prince Rupert Loewenstein, instead of Regan's book. Plaintiffs claim that Regan continued to discuss marketing plans with Cohl and CPI, and that, at some unspecified date, "[t]he CPI Defendants through their agents agreed to purchase books from Plaintiff at $25 per book, beginning with an initial purchase of 5000 books." (Pls.' Second Am. Compl. ¶ 40.) Also, they claim that non-party Mark Norman, acting on behalf of "the CPI defendants," told Regan not to sign with another distributor because

---

[1] Plaintiffs' original Complaint and Amended Complaint both state that these events took place on January 28, 2002. (Pls' Compl. ¶ 51; Pls' Am. Compl. ¶ 55.) Their Second Amended Complaint, in contrast, says that the events happened "[b]y early to mid 2002." (Pls.' Second Am. Compl. ¶ 43.) The District Court found that these events took place on January 28, 2002, and we see no reason to conclude that this finding is erroneous.

[2] In an affidavit, Dora Loewenstein informed the District Court that she is now known as Countess Theodora Della Gherardesca.

3

"we want the book exclusively." (Pls.' Second Am. Compl. ¶ 66.) In August of 2002, however, Cohl allegedly told Regan that he and CPI would not market her book because they intended to market Dora Loewenstein's book instead. Plaintiffs claim that Defendants then made arrangements to deprive Regan of several business opportunities.

After Regan had published her book, she and her company filed suit in the Eastern District of Pennsylvania. Their Second Amended Complaint contains sixteen counts that fall into three general categories: (1) claims based on Defendants' failure to comply with their alleged promises; (2) claims that Defendants violated intellectual property and tort law by stealing Regan's material for use in Dora Loewenstein's book; and (3) claims that Defendants have damaged Regan's career in various ways. Defendants filed a motion to dismiss under FED. R. CIV. P. 12(b)(6) for failure to state a claim and under FED. R. CIV. P. 12(b)(2) for lack of personal jurisdiction. The District Court granted the motion, concluding that it lacked personal jurisdiction over any of the Defendants. The District Court also denied Plaintiffs' motion for jurisdictional discovery.

We review *de novo* a district court's order dismissing a complaint for lack of personal jurisdiction. *Pinker v. Roche Holdings Ltd.*, 292 F.3d 361, 368 (3d Cir. 2002). To the extent that the District Court made factual findings related to personal jurisdiction, we review them for clear error. *Mellon Bank (East) PSFS, Nat. Ass'n v. Farino*, 960 F.2d 1217, 1220 (3d Cir. 1992). We review *de novo* a district court's grant of a motion to dismiss for failure to state a claim, construing the complaint in the light most favorable to the plaintiff. *Sands v. McCormick*, 502 F.3d 263, 267 (3d Cir. 2007). We review a

4

district court's decision to deny jurisdictional discovery for abuse of discretion. *Toys "R" Us, Inc. v. Step Two, S.A.*, 318 F.3d 446, 455 (3d Cir. 2003).

II.

Pennsylvania's long-arm statute authorizes the exercise of general or specific jurisdiction to the extent allowed by the federal Constitution. 42 PA. CONS. STAT. ANN. § 5322(b). When a defendant challenges personal jurisdiction, the plaintiff has the burden of proof to establish "jurisdictional facts through sworn affidavits or other competent evidence." *Patterson by Patterson v. F.B.I.*, 893 F.2d 595, 604 (3d Cir. 1990) (quotation omitted).

When determining whether specific jurisdiction arises from an alleged contract, courts consider "prior negotiations and contemplated future consequences, along with the terms of the contract and the parties' actual course of dealing" to determine whether minimum contacts exist between the defendant and the forum state. *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 479 (1985). Even assuming, *arguendo*, that a contract ever existed in this case, which is far from clear, the "prior negotiations and contemplated future consequences" are insufficient to establish minimum contacts between the Defendants and Pennsylvania. The District Court found that "[t]he evidence submitted by Plaintiffs shows only that Plaintiff contacted Defendants seeking their approval and cooperation . . ." and that "[o]ther than responding to Plaintiff's request for Defendants' support of her book, Defendants did not solicit the contract or initiate a business

5

relationship leading up to the contract."[3]  Plaintiffs have not shown that these findings of fact regarding the "prior negotiations" are clearly erroneous, so we will accept them as true.  Such unilateral communications cannot constitute purposeful availment by the Defendants.  *See Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 32 (3d Cir. 1993) (noting that "unilateral contacts by the party asserting the existence of personal jurisdiction are insufficient").  Moreover, Plaintiffs have not shown that the purported contract would have required any future action in Pennsylvania by Defendants.

Plaintiffs argue, based on a "stream of commerce" theory, that specific jurisdiction arises from the assorted claims related to Dora Loewenstein's alleged copying of Regan's book.[4]  But Plaintiffs have not shown that any of the Defendants had the ability to control where the book would be distributed.  Even if we were to find that personal jurisdiction existed, these claims could not survive a motion to dismiss because Plaintiffs have not shown that any element of Dora Loewenstein's book is substantially similar to a legally protectable element of Regan's book.[5]  Plaintiffs fail to state a Lanham Act claim because

---

[3] Plaintiffs allege that Regan met with Cohl, King, and Loewenstein in Pennsylvania to discuss her book, but they do not provide any details.  (Pls.' Second Am. Compl. ¶ 13.) Significantly, they have not shown clear error in the District Court's factual finding that these meetings took place *after* King had made clear on January 28, 2002 that the Defendants would not cooperate with Regan.  Contacts that took place following the alleged breach of contract cannot qualify as "prior negotiations."

[4] Dora Loewenstein is not a party, so we will construe these as secondary liability claims.

[5] Plaintiffs cite five similarities: (1) both books contain an ink sketch "in the exact same style"; (2) they contain "interviews with fans about their experiences with the Stones and their music"; (3) they feature artwork by Ron Wood; (4) they feature

they do not allege that they own a trademark. Also, they fail to show how any aspect of Regan's fan tribute book qualifies as a "trade secret."

Finally, Plaintiffs assert that Defendants arranged for Regan to lose various professional opportunities, such as the opportunity to host a radio show about the Rolling Stones and to take over a Rolling Stones fan club and magazine. Defendants allegedly accomplished this by defaming Regan and telling third parties that they would be "frozen out" if they dealt with her. Plaintiffs have failed to show that Defendants took any actions that were aimed at Pennsylvania,[6] nor that the alleged opportunities had any connection to Pennsylvania. Thus, specific jurisdiction does not arise from these claims.

III.

Plaintiffs claim that the District Court had general jurisdiction over the Defendants because of the latter's "continuous and systematic" contacts with Pennsylvania. *See Provident Nat'l Bank v. California Fed. Sav. & Loan Ass'n*, 819 F.2d 434, 437 (3d Cir. 1987). In particular, they assert that: (1) Defendants or their agents have been present in

photographs of the same concert; and (5) some photographs in Loewenstein's book were the same ones that Defendants allegedly provided to Regan. (Pls.' Second Am. Compl. ¶ 175.)

[6] The pleadings are vague about where, when, and to whom the alleged defamatory statements were made. The Second Amended Complaint specifies that Cohl and King made defamatory statements "in the Rolling Stones tour office" during the *A Bigger Bang* tour. (*See* Pls.' Second Am. Compl. ¶ 188, 190.) It does not state where the tour office was located. Although the Second Amended Complaint says that Cohl made defamatory statements to "members of the public and recording professionals," it does not specify whether the intended audiences for these alleged statements were Pennsylvania residents. (Pls.' Second Am. Compl. ¶ 190.)

7

Pennsylvania, and set up temporary offices, during recent Rolling Stones tours in the state; and (2) Defendants regularly sell Rolling Stones concert tickets, recordings, and paraphernalia in Pennsylvania through distributors. Plaintiffs admit, however, that they cannot meet their burden to demonstrate the existence of general jurisdiction without jurisdictional discovery, which the District Court declined to grant. Jurisdictional discovery should be allowed unless the plaintiff's claim is "clearly frivolous," which might be the case if a plaintiff makes "a mere unsupported allegation that the defendant 'transacts business' in an area . . . ." *Massachusetts Sch. of Law at Andover, Inc. v. Am. Bar Ass'n*, 107 F.3d 1026, 1042 (3d Cir. 1997). The alleged physical presence of Defendants or their agents during occasional concerts is plainly not a "continuous and systematic" contact, and jurisdictional discovery cannot change this fact. Moreover, the District Court found that "[t]he Rolling Stones' recordings and paraphernalia are distributed and sold in Pennsylvania and throughout the U.S. by wholly independent companies," and Plaintiffs have not demonstrated that this finding is clearly erroneous. Therefore, we conclude that the District Court did not abuse its discretion by declining to permit jurisdictional discovery with regard to Defendants' alleged sales in Pennsylvania.

IV.

For the reasons above, we will affirm the District Court's order granting the Defendants' motion to dismiss Plaintiffs' complaint.