Werner NEUBERGER, et al.,

v.

William SHAPIRO, et al.

Official Committee of Unsecured Creditors

v.

William Shapiro, et al.

Official Committee Of Unsecured Creditors

v.

R.F. Lafferty & Co., et al.

Nos. CIV. A. 97–7947, CIV. A. 99–526, CIV. A. 00–519.

United States District Court, E.D. Pennsylvania.

Aug. 25, 2000.

Michael J. Molder, John F. Innelli, Innelli and Molder, Philadelphia, PA, for Plaintiffs.

Nina B. Shapiro, Lancaster, PA, for defendants William Shapiro, Kenneth S. Shapiro, Nathan Tattar.

William Shapiro, Bala Cynwyd, PA, pro se.

Kenneth S. Shapiro, Bala Cynwyd, PA, pro se.

Lester Shapiro, Bala Cynwyd, PA, pro se.

Nathan Tattar, Havertown, PA, pro se.

Marc S. Henzel, Law Offices of Marc S. Henzel, Philadelphia, PA, for Defendant John B. Orr.

John B. Orr, Drexel Hill, PA, pro se.

Adam Varrenti, Jr., West Chester, PA, pro se.

William Shapiro, Bala Cynwyd, PA, for Defendant Welco Securities, Inc.

Aegis J. Frumento, Jenice L. Malecki, Singer, Frumento, LLP, New York, NY, Stuart L. Melnick, Tanner Propp, LLP, New York, NY, for Defendant R.F. Lafferty & Co., Inc.

David C. Franceski, Jr., Stradley Ronon Stevens & Young, Philadelphia, PA, David R. Dwares, Ross, David L. Perry, Dickson & Bell, L.L.P., Washington, DC, for Defendant Cogen, Sklar, L.L.P.

Kenneth S. Shapiro, Bala Cynwyd, PA, for William Shapiro, P.C.

Matthew J. Hamilton, Barbara W. Mather, Pepper Hamilton, LLP, Philadelphia, PA, for Respondent Official Committee of Unsecured Creditors.

Deljean Shapiro, Bala Cynwyd, PA, pro se.

Stuart L. Melnick, Tanner Propp, LLP, New York, NY, for Movant A.L. Wellen & Co.

## MEMORANDUM

LUDWIG, District Judge.

Plaintiff class (Neuberger) and plaintiff Official Committee of Unsecured Creditors move for approval of a partial settlement and entry of a bar order as to claims against settling defendant Cogen, Sklar, L.L.P., Fed.R.Civ.P. 23(e). Non-settling defendants William Shapiro, Kenneth Shapiro, John Orr, and Adam Varrenti object to the settlement and the bar order. Plaintiff class also moves for approval of attorney's fees and costs.

On December 23, 1997, this action was filed for securities law violations relating to plaintiffs' purchases, in 1996 and 1997, of debt certificates issued by the Equipment Leasing Company of America (EL-COA). According to the complaint, the securities were purchased in reliance upon materially false and misleading prospectuses and on registration statements by ELCOA and its parent company, Walnut Leasing, Inc. Complt. at ¶ 1. The individual defendants in the action are former officers and directors of ELCOA or Walnut Leasing. The limited liability, professional services defendants are two broker/dealer firms (Welco Securities, Inc. and R.F. Lafferty & Co.); an accounting firm (Cogen, Sklar, L.L.P.); and a law firm (William Shapiro P.C.)—each of which is alleged to have assisted in the sale of the certificates.

On November 24, 1998, plaintiff class was certified under Fed.R.Civ.P. 23(b)(3) and was defined as follows:

All persons who purchased Fixed Rate or Demand Certificates from Equipment Leasing Company of America (ELCOA) on or after December 23, 1994, including persons who rolled-over certificates that were issued before December 23, 1994 into a new certificate.[1]

After protracted litigation of the class action and related actions (99–526, 00–519, 99–2010), defendant Cogen, Sklar, plaintiff class, and the Committee of Unsecured Creditors negotiated a settlement of all claims, *inter se,* the terms of which are set forth in a settlement agreement. On June 8, 2000, preliminary approval of the settlement was granted, and notice of the terms of the settlement was sent to plaintiff class members. A hearing was held on July 27, 2000, and continued to August 8, 2000, at which argument was presented on individual defendants' objections.

A district court "can endorse a settlement only if the compromise is 'fair, adequate, and reasonable.'" *Eichenholtz v. Brennan,* 52 F.3d 478, 482 (3d Cir.1995)(quoting *Walsh v. Great Atlantic & Pacific Tea Co., Inc.,* 726 F.2d 956, 965 (3d Cir.1983)). A settlement cannot be approved without examining whether the class was given proper notice. *In re Ikon Office Solutions, Inc. Securities Litigation,* 194 F.R.D. 166, 174 (E.D.Pa.2000). Moreover, a fairness evaluation may include consideration of the interests of third parties. *Eichenholtz,* 52 F.3d at 482.

Our Court of Appeals has established nine fairness factors to be considered in approving a class settlement:

(1) the complexity, expense, and likely duration of the litigation ...; (2) the reaction of the class to the settlement ...; (3) the stage of the proceedings and the amount of discovery completed ...; (4) the risks of establishing liability ...; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial ...; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery ...; (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation. ...

*Id.* at 488 (quoting *Girsh v. Jepson,* 521 F.2d 153, 157 (3d Cir.1975)). The proponents of the settlement have the burden of establishing that these factors favor approval of the settlement. *See In re General Motors Corp. Pick–Up Truck Fuel Tank Products Liability Litigation,* 55 F.3d 768, 785 (3d Cir.1995).

### 1. Notice

On June 8, 2000, the proposed form of notice was approved preliminarily, along with the settlement agreement. Rule 23(c)(2) requires that notice be given through the "best notice practicable under the circumstances, including individual notice to all members who can be identified through reasonable efforts." Because the members of the class are certificate holders of ELCOA, their addresses were readily available from ELCOA's books and records. On June 16, 2000, notice was sent by U.S. mail to each class member.[2] *See* pls.' mem. at ex A (form of notice). On July 7, 2000, the claims administrator sent follow-up correspondence to the 2,400 class members who had not yet responded.

The notice sent to members of plaintiff class comports with due process and the Federal Rules of Civil Procedure. *See Mullane v. Central Hanover Bank & Trust Co.,* 339 U.S. 306, 314, 70 S.Ct. 652, 94 L.Ed. 865 (1950); *Bell Atlantic Corp. v.*

---

**1.** Excluded from the class are defendants and any members of their immediate families and any business or trust in which they have an interest.

**2.** Additional information as to the identity of class members was made available by Committee of Unsecured Creditors having been obtained in the bankruptcy proceedings.

*Bolger*, 2 F.3d 1304, 1317 (3d Cir.1993). The notice went to all 3,301 members of the class and contained the substance of the settlement agreement, including the manner in which the settlement fund was proposed to be distributed. As of the date of the fairness hearing—and this memorandum—no member sought to be excluded from the settlement or objected to the settlement.

### 2. Fairness

■ Rule 23(e) "requires courts to 'independently and objectively analyze the evidence and circumstances before it in order to determine whether the settlement is in the best interest of those whose claims will be extinguished.'" *In re General Motors Corp.*, 55 F.3d at 775 (quoting 2 Herbert Newberg and Alba Conte, Newberg on Class Actions § 11.41, at 11–88 to 11–89 (2d ed.1992)). In essence, in approving a settlement, the court acts as a fiduciary for absent class members. *See id.; In re Ikon Office Solutions, Inc.*, 194 F.R.D. at 178.

■ (a) Complexity, expense, and likely duration of the litigation. "This factor is intended to capture 'the probable costs, in both time and money, of continued litigation.'" *In re General Motors Corp.*, 55 F.3d at 812 (quoting *Bryan v. Pittsburgh Plate Glass Co.*, 494 F.2d 799, 801 (3d Cir.1974)). In these regards, plaintiffs' motion states, "a trial on the merits would entail an extensive paper trail covering at least three or four annual audits and presentations to the jury of complicated questions of professional standards applicable to auditors." Pls.' mem. at 6.

Trial is scheduled on the remaining claims for November, 2000. To include claims against the accountants would lengthen the trial considerably. After the settlement was negotiated, plaintiffs moved for summary judgment on only one claim against the remaining defendants.

A trial that included the claim against Cogen, Sklar would substantially increase the amount of the trial preparation and the costs of an already "paper heavy" complex securities fraud case.

Likewise, as to Cogen, Sklar's accounting decisions, "extensive expert testimony would certainly be required on the nature of the accounting practices, the significance of various decisions in relation to GAAP, and the effect that those practices ultimately had" on plaintiffs' certificates. *In re Ikon Office Solutions, Inc.*, 194 F.R.D. at 179 (approving partial settlement of a complex securities fraud class action). Therefore, the prospect of complexity and additional costs encourages settlement approval.

■ (b) Class reaction. "In an effort to measure the class's own reaction to the settlement's terms directly, courts look to the number and vociferousness of the objectors. Courts have generally assumed that 'silence constitutes tacit consent to the agreement.'" *In re General Motors Corp.*, 55 F.3d at 812. However, *In re General Motors Corp.* cautioned against equating silence with approval, particularly as to securities litigation settlements in which "'shareholders have small holdings or diversified portfolios, ... and thus have an insufficient incentive to contest an unpalatable settlement agreement because the cost of contesting exceeds the objector's pro rata benefit.'" *Id.* at 812 (quoting *Bell Atlantic Corp. v. Bolger*, 2 F.3d 1304, 1313 n. 15 (3d Cir.1993)).

As of the fairness hearing, no class member had objected to the settlement or "opted out."[3] The objectors are certain non-settling defendants. Unlike typical securities fraud cases, plaintiff class members have strong economic incentives to object: "While an investor could purchase an ELCOA certificate for as little as $100,

---

**3.** As of the fairness hearing, plaintiffs' class counsel represented that the claims administrator had received over 85 per cent of the class members' responses and no objections,

totaling over close to $13 million or 70 per cent of the class members' damages and claims. Hearing tr. at 5–6 (July 17, 2000).

investments were typically in excess of $1,000 and most Class members hold more than one certificate." Pls.' mem. at 8. Therefore, the class's silence may be read to favor approval.

■ (c) Stage of the proceedings and amount of discovery. This factor "captures the degree of case development that class counsel have accomplished prior to settlement. Through this lens, courts can determine whether counsel had an adequate appreciation of the merits of the case before negotiating." *In re General Motors Corp.*, 55 F.3d at 813. Unquestionably, this litigation has proceeded to a late stage, after extensive paper and deposition discovery by both plaintiffs and Cogen, Sklar and other defendants.[4] In July, 1998, plaintiffs successfully opposed defendants' motions to dismiss and in November, 1998, their attempts to preclude certification of the class. At this point in the proceedings, the parties have an understanding of the case sufficient to evaluate its merits.

■ (d) Risks of establishing liability. This factor entails a balancing of the potential risks and rewards of litigation against the benefits of settlement. Cogen, Sklar is charged with violating of § 11 of the Securities Act of 1933. 15 U.S.C. § 77k.[5] According to the complaint, "the financial statements included in the Prospectus contain numerous material misstatements and utterly failed to comply with generally accepted accounting principles." Complt. at ¶ 56. Specifically, the complaint sets forth four groups of misrepresentations and misstatements—the "use of proceeds" obtained by the September, 1995 offering; the interdependence of Walnut and ELCOA, including the indepen-

dent financial viability of each; the financial statements misrepresented ELCOA's assets; and the risk disclosure statement in the audit report. Cogen, Sklar asserted the following defenses: the statements did not contain material misstatements; the statements complied with all accounting standards; Cogen, Sklar is not responsible for damages; and the certificates were not purchased pursuant to registration statements that contained financial statements in which it was involved. *See* answer of defendant Cogen, Sklar, L.L.P.; pls.' mem. at 10. Plaintiffs are not required to produce evidence other than that the financial statements contained material, untrue statements, liability being "virtually absolute"—scienter is immaterial. *Herman & MacLean v. Huddleston*, 459 U.S. 375, 382, 103 S.Ct. 683, 687, 74 L.Ed.2d 548 (1983). The proof would require "confront[ing] the jury with a large quantity of documents and conflicting arguments from qualified accounting experts," on all the allegedly inaccurate statements. Pls.' mem. at 10. This factor, while perhaps not as strong as some others, points toward approval.

■ (e) Risks of establishing damages. Plaintiffs' damages are the difference between the price of the security and its value at the time the suit was filed. *See* 15 U.S.C. § 77k(e). However, proof of the value of ELCOA certificates at the time suit was filed may be difficult. *See In re Ikon Office Solutions, Inc.*, 194 F.R.D. at 181. In addition, defendants would present evidence of "negative causation"—that to the extent "any portion or all of [plaintiffs'] damages represents other than the depreciation in value of such security resulting from [the misstatements or omis-

---

4. Cogen, Sklar counsel have produced and plaintiffs' counsel have reviewed "hundreds of pages of documents constituting the audit workpapers of Cogen, met with and analyzed the workpapers with a consulting expert, [and] took five days of deposition testimony of the four Cogen accountants involved in the ELCOA audit engagements." Pls.' mem. at 8.

5. The Securities Act imposes civil liability on "every accountant ... who has with his consent been named as having prepared or certified any part of the registration statement ... or any report or valuation which is used in connection with the registration statement" for "an untrue statement of a material fact or omit[ting] to state a material fact." 15 U.S.C. § 77k(a).

in] the registration statement," its liability is reduced or eliminated. 15 U.S.C. § 77k(e); *see McMahan & Co. v. Wherehouse Entertainment, Inc.,* 65 F.3d 1044, 1048 (2d Cir.1995). Plaintiffs' and Cogen, Sklar's own measure of damages varies significantly—plaintiffs estimate damages in the range of $13 to $17 million compared to Cogen, Sklar's estimate of $2.5 to $9.2 million. *See* pls.' mem. at ex. A (form of notice). This proof of damages factor also weighs in favor of approval.

(f) Risks of maintaining class action through trial. On November 24, 1998, plaintiff class was certified over objections of all defendants. While defendant R.F. Lafferty has moved both to decertify the class and for certification of subclasses, those motions to date have been deferred. There is little risk that the class will be decertified, eliminating the argument that the value of the claims as unaggregated will decrease. *See In re General Motors Corp.,* 55 F.3d at 817.

(g) The ability of Cogen, Sklar to withstand a greater judgment. There is little information available with which to evaluate this factor, other than the representations of class counsel. Cogen, Sklar is a "mid-size regional accounting firm," the financial condition of which is not in the record. Pls.' mem. at 10–11. The complaint charges Cogen, Sklar with causing damages in the range of $13 $17 million, for which it would be jointly and severally liable. Cogen, Sklar's professional liability insurance policy, represented to be capped at $3 million, is not large enough to cover the entire amount of damages sustained, and the settlement amount—$4.5 million—is 158 per cent of the coverage. Pls.' mem. at 11. Class counsel represents that "[e]ven if plaintiffs were to prevail at trial and in subsequent appeals, the likelihood that plaintiffs could recover more than is available under this settlement is exceptionally slim." *Id.*

Therefore, the amount of the settlement, which is substantially in excess of the amount of coverage, is a factor that also favors approval.

(h) The range of reasonableness of the settlement fund in light of the best possible recovery and attendant risks of litigation. "In order to assess the reasonableness of a proposed settlement seeking monetary relief, 'the present value of the damages plaintiffs would likely recover if successful, appropriately discounted for the risk of not prevailing, should be compared with the amount of the proposed settlement.'" *In re Prudential Ins. Co. of America Sales Practices Litigation,* 148 F.3d 283, 322 (3d Cir.1998)(quoting *In re General Motors Corp.,* 55 F.3d at 806). The settlement amount—$4.5 million-falls within a reasonable range, considering class counsel's valuation between $13 and $17 million and Cogen, Sklar's valuation between $2.5 and $9.2 million. In addition, plaintiff class faces both liability and damages risks if this claim went to trial and, thereafter, on appeal. Accordingly, this factor suggests approval. As stated by *In re Ikon Office Solutions, Inc.,* approving a securities class partial settlement, "the hallmarks of a questionable settlement are not present: plaintiffs receive a significant monetary settlement ... and there is no suggestion of collusion between the defendant[ ] and plaintiffs' counsel." 194 F.R.D. at 183.

Therefore, upon review of all the factors, this settlement appears to be "fair, reasonable, and adequate" in terms of protection of the interests of the class.

### 3. Objections of Non Settling Defendants

Defendants William Shapiro, Kenneth Shapiro, Lester Shapiro, Nathan Tattar, Welco Securities, Inc., William Shapiro, Esq., PC, Deljean Shapiro, Philip Bagley, and John Orr[6] object to the settlement.

---

**6.** Non-settling defendants Adam Varrenti, *pro se,* and R.F. Lafferty & Co. have not objected to the settlement agreement. All of the individual objectors are officers or directors of ELCOA or its parent Walnut.

They object to the proposed bar order's extinction of their rights to indemnification and contribution, and to the non-use of the settlement agreement for evidentiary purposes at trial.

The bar order states:

All parties to the Litigation are permanently and forever barred and enjoined from filing, commencing, instituting, prosecuting or maintaining, either directly, indirectly, representatively, or in any other capacity, any claim, counterclaim, cross-claim, third-party claim or other action arising out of the Settled Claims and/or the transactions and occurrences referred to in the Plaintiffs' Complaints (including, without limitation, any claim or action seeking indemnification and/or contribution, however denominated) against Cogen or any of the Released Parties, whether such claims are legal or equitable, known or unknown, foreseen or unforeseen, matured or unmatured, accrued or unaccrued.

Stipulation and Agreement of Settlement at ex. 9, ¶ 5 (Order Barring All Claims Against Cogen, Sklar, L.L.P.). The bar order is amplified as follows:

If, following a trial, any of the Plaintiffs or any Class Member obtains a judgment, award or recovery against any of the Non Settling Defendants, any of the Shapiro Related Parties, or any other person on any claim asserted in, relating to, arising out of the subject matter of the Litigation for which Cogen or any of the Released Parties would or could be liable by a claim for contribution or indemnity but for the provisions of this Bar Order, each such Plaintiff or Class Member shall reduce his, her or its judgment, award or recovery against such person in accordance with applicable law or, in the absence of a statute, by the greater of: (i) an amount equal to the Settlement Fund; (ii) the pro rata

share of the Released Parties; or (iii) in the event that the doctrine of comparative negligence is held applicable, by the amount, percentage or share of such judgment, award or recovery (if any) lawfully attributable by the Court or jury to Cogen and/or any of the Released Parties.

*Id.* at ¶ 7.

The Shapiro defendants make five specific objections to the bar order: 1) It extinguishes their indemnification rights against Cogen, Sklar; 2) does not protect them from indemnification claims by Cogen, Sklar; 3) it bars federal contribution claims in violation of the PSLRA (Private Securities Litigation Reform Act of 1995); it extinguishes objectors' state law and contractual claims against Cogen, Sklar; and 5) it renders the terms of the settlement agreement inadmissible. Shapiro defs.' mem. at 2.[7]

a. Contribution Under the Securities Act

▆▆▆ The PSLRA amended the Securities Act of 1933 and the Securities Exchange Act of 1934 to include contribution rights among defendants for joint and several liability. 15 U.S.C. 77k(f)(1), 78u–4(g)(2)(A). The PSLRA also amended the Securities Exchange Act of 1934 to include a provision for bar orders, eliminating claims for contribution against settling defendants:

If a covered person enters into a settlement with the plaintiff prior to final verdict or judgment, the verdict or judgment shall be reduced by the greater of—(i) an amount that corresponds to the percentage of responsibility of that covered person; or (ii) the amount paid to the plaintiff by that covered person.

15 U.S.C. § 78u–4(g)(7)(B). A "covered person" is defined as "(1) a defendant in any private action arising under this chapter; or (2) a defendant in any private action arising under section 77k of this

---

**7.** Non-settling defendant John Orr's identical memorandum will not be referred to for cita- tion purposes.

title, who is an outside director of the issuer of the securities that are the subject of the action." 15 U.S.C. § 78u–4(g)(10)(C). Here, Cogen, Sklar is not a "covered person" because it is not a defendant under the chapter to which the statute refers and is a non-director defendant under 15 U.S.C. § 77k.

Nonetheless, Cogen, Sklar is entitled to a bar order against contribution claims arising out of this action. Case law has consistently upheld bar orders that extinguish contribution claims by non-settling defendants in securities fraud actions. In *Eichenholtz v. Brennan*, 52 F.3d 478, 486 (3d Cir.1995), prior to the effective date of the PSLRA, our Court of Appeals upheld a settlement contribution bar order under federal common law. "Defendants, who are willing to settle, 'buy little peace through settlement unless they are assured that they will be protected against co-defendants' efforts to shift their losses through cross-claims for indemnity, contribution, and other causes related to the underlying litigation.'" *Id.* (quoting *In re U.S. Oil and Gas Litigation*, 967 F.2d 489, 494 (11th Cir.1992)). *Eichenholtz* held that the rule in this Circuit allows contribution bar orders in federal securities cases where "the jury, in the non-settling defendants' trial, will assess the relative culpability of both settling and non-settling defendants, and the non-settling defendants will pay a commensurate percentage of the judgment."[8] *Id.* at 487. Further: "The proportionate fault rule is the equivalent of a contribution claim; the non-settling defendants are only responsible for their portion of the liability." *Id.; see also In re Masters Mates & Pilots Pension Plan*, 957 F.2d 1020, 1031 (2d Cir.1992).

Should plaintiffs prevail at trial, non-settling defendants' contribution rights are well protected. The settlement agreement and bar order specify that in the event that a judgment is entered against non-settling defendants, the amount of the award will be reduced by either the amount of settlement or by Cogen Sklar's proportionate fault, whichever is greater. Plaintiffs' bear the risk of an improvident settlement, not the non-settling defendants. *See Eichenholtz*, 52 F.3d at 487; *In re Jiffy Lube Securities Litigation*, 927 F.2d 155, 160 n. 3 (4th Cir.1991). Non-settling defendants have come forth with no scenario in which their statutory rights to contribution are compromised by the entry of the proposed bar order.

### b. Indemnification

■■■■ Our Court of Appeals has definitively found that "there is no express right to indemnification under the 1933 or 1934 Acts." *Eichenholtz*, 52 F.3d at 483. Also: "We agree with those courts that have held that there is no implied right to seek indemnification under the federal securities law." *Id.* at 484.[9] *Lucas v. Hackett Associates, Inc.*, 18 F.Supp.2d 531 (E.D.Pa.1998)(DuBois, J.), considered the availability of state-law indemnification rights of a non-settling defendant: "To the extent that [defendant] intends to seek indemnification premised on violations of federal securities laws—whether those claims are clothed in state law tort claims or federal securities law claims—[defendant] may not seek indemnification because such claims are preempted ...." (*citing Globus v. Law Research Service, Inc.*, 418 F.2d 1276, 1288 (2d Cir.1969); *Baker, Watts & Co. v. Miles & Stockbridge*, 876 F.2d 1101, 1108 (4th Cir.1989)(cited with approval by *Eichen-*

---

8. "As pointed out by the Ninth Circuit, the proportionate fault rule satisfies the statutory contribution goals of equity, deterrence, and the policy goal of encouraging settlement." *Eichenholtz*, 52 F.3d at 487 (citing *Franklin v. Kaypro Corp.*, 884 F.2d 1222, 1231 (9th Cir. 1989)).

9. *Eichenholtz* found that "indemnification runs counter to the policies underlying the 1993 and 1934 Acts." *Eichenholtz*, 52 F.3d at 483 (approving a bar order over objections regarding indemnification where the agreement between the underwriter and issuer contained an indemnification provision).

*holtz,* 52 F.3d at 486–87)). In lieu of deciding which of defendants' potential claims for indemnification were "de facto federal securities claims," *Lucas* left the decision to the state courts. *Id.*

Here, the Shapiro defendants have not articulated the scope of the indemnification claims that they might bring in the future against Cogen, Sklar. However, in the related 10(b) securities fraud preference action approved by the bankruptcy court—and case-managed with the class action—the Shapiro defendants asserted in general terms cross-claims for contribution, indemnification, and state-law claims against Cogen, Sklar. *Official Committee of Unsecured Creditors v. Shapiro,* Civ.A. No. 99–526 (docket no. 45).[10] Inasmuch as those cross-claims arise out of the Shapiro defendants' alleged liability under the securities laws, they are pre-empted and, therefore barred as a matter of law. *See Lucas,* 18 F.Supp.2d at 537 (citing *Baker, Watts & Co. v. Miles & Stockbridge,* 876 F.2d 1101, 1108 (4th Cir.1989)).

Moreover, as to indemnification, the settlement agreement protects non-settling defendants in the event that "a court concludes that the non-settling defendants would have a right to be indemnified by Cogen (under any legal theory) but for the provisions of the Bar Order." Ltr. from David Dwares, Esq. (counsel for Cogen) to Seymour Kurland, Esq. (Special Master), Aug. 4, 2000. The settlement agreement states:

> If, following a trial and notwithstanding the provisions of the Bar Order . . ., any of the Non Settling Defendants, any of the Shapiro Related Parties, or any other person obtains a judgment, award or recovery against Cogen or any of the Released Parties for contribution or indemnity, Plaintiffs and the Settlement Class agree to indemnify and hold harmless Cogen and the Released Parties from and against all such claims or

causes of action of or for contribution or indemnity, however denominated, that have been or otherwise may be asserted against Cogen or any of the Released Parties based upon, arising out of, relating to, or in connection with any of the Settled Claims.

Stipulation and Agreement of Settlement, ¶ 16.2. For all of these reasons, the Shapiro defendants' claims of inequity in the bar order concerning indemnification are without merit.

### c. State Law Claims (Breach of Contract and Negligence)

The Shapiro defendants also object to the scope of the bar order's preclusion of state law claims against Cogen, Sklar. When asked to specify state law claims that would be prejudiced, these defendants referred simply to breach of contract and professional negligence. *See* hearing tr. at 3–10 (August 8, 2000).

■ The Shapiro defendants have failed to support their claim of entitlement to sue Cogen, Sklar—the accounting firm retained by Walnut and ELCOA—for breach of contract in the performance of its audits. The Shapiro defendants, upon request, submitted "engagement letters" entered into between Cogen, Sklar and Walnut and ELCOA for audits in 1990 and 1992 through 1997. These letters were signed by either William or Kenneth Shapiro on behalf of the corporations, not for the individual officers and directors who are parties to this litigation. The Shapiro defendants have not cited any case suggesting that they individually may claim damages for violation of a contract between the corporations and Cogen, Sklar. There are no cases in which a director or officer—himself or herself alleged to have been engaged in fraud—was permitted to sue an auditor for violation of the corpo-

---

**10.** Cogen, Sklar was not required to respond to these claims while court-ordered settlement negotiations were underway. *Official*

*Committee of Unsecured Creditors v. Shapiro,* Civ.A. No. 99–526.

rate auditing contract.[11] *See In re Sunrise Securities Litigation,* 793 F.Supp. 1306, 1323 (E.D.Pa.1992)(under Florida law, officers and directors may be third-party beneficiaries of a corporation's contracts for professional services only where there is a primary and direct intention to benefit the individuals).

▇▇▇▇ The Shapiro defendants' further objection to the bar order is that it precludes state law claims against Cogen, Sklar for professional negligence. In Pennsylvania, an accounting firm can be liable for professional negligence where it violates its duty to " 'exercise the skill and knowledge normally possessed by members of that profession or trade in good standing in similar communities.' " *Fort Washington Resources, Inc. v. Tannen,* 901 F.Supp. 932, 941 (E.D.Pa.1995)(quoting *Robert Wooler Co. v. Fidelity Bank,* 330 Pa.Super. 523, 531, 479 A.2d 1027, 1031 (1984)). However, any claim against Cogen, Sklar for substandard performance of its duties is in reality a claim for indemnification or contribution.[12] If the Shapiro defendants are absolved of liability at trial, and it is determined that but for Cogen, Sklar's negligence, the Shapiro defendants would not have had to defend this action, the plaintiff class has agreed to indemnify. If Cogen, Sklar's negligence contributed to plaintiffs' injuries, its proportionate share will be credited to the Shapiro defendants. Therefore, any damages for Cogen, Sklar's negligence would not be borne by the Shapiro defendants, and such a recovery would be duplicative given the terms of the bar order.

### d. Evidentiary issues

▇▇▇▇ Shapiro defendants' final objection to the proposed order concerns the non-admission of liability provision.

> Neither the Stipulation nor the Settlement contained therein, nor any act performed or document executed pursuant to or in furtherance of the Stipulation or the Settlement, is or may be deemed to be used as an admission of or evidence of the validity or amount of any Settled and/or Released Claims.

Stipulation and Agreement of Settlement, at ex. 7 ¶ 18. The Shapiro defendants urge that their right to use the settlement as evidence at trial is thereby prejudiced, citing Fed.R.Evid. 408 (compromise and offers of compromise).

However, the Shapiro defendants have not specified how they can be harmed. The evidentiary rule on which they base their argument is inapposite-precluding evidence of a compromise to prove liability for a claim. Such evidence is admissible

11. At the hearing, the Shapiro defendants observed that under Delaware corporations law, Del.Code Ann. tit. 8, § 325, directors and officers can be liable to an accounting firm for auditing fees incurred for services rendered to the corporation. Hearing tr. at 8 (Aug. 8, 2000). Section 325 states:

(a) When officers, directors or stockholders of any corporation shall be liable by the provisions of this chapter to pay the debts of the corporation, ... any person to whom they are liable may have an action, at law or in equity, against only 1 or more of them, and the complaint shall state the claim against the corporation, and the ground on which the plaintiff expects to charge the defendants personally.

(b) No suit shall be brought against any officer, director or stockholder for any debt of a corporation of which such person is an officer, director or stockholder, until judgment be obtained therefor against the cor-

poration and execution thereon returned unsatisfied.

Del.Code Ann. tit. 8, § 325. This statute, however, is not authority for the proposition that individual directors and officers may sue an accounting firm for breach of contract with the corporations.

12. Contribution arises where both parties are primarily at fault. Indemnification is available only to a secondary party required to defend against the wrongful acts of another, who is the initial wrongdoer. " 'The right of indemnity rests upon a difference between the primary and secondary liability of two persons each of whom is made responsible by the law to the injured person.' " *See Lucas,* 18 F.Supp.2d at 535 (discussing the differences between contribution and indemnification)(quoting *Builders Supply Co. v. McCabe,* 366 Pa. 322, 77 A.2d 368, 370-71 (Pa.1951)).

only to establish bias or prejudice of a witness. Fed.R.Evid. 408. The language at issue precludes use of the settlement agreement as "an admission of or evidence of the validity or amount of" settled claims. In an appropriate instance, it may be used to impeach a witness. Non-admission of liability is a standard provision in a settlement agreement, and its admissibility or use at trial is to be determined by the trial judge.

### 4. Application for Award of Attorney's Fees and Expenses

Class counsel moves for expenses and attorney's fees. "[F]ee petitions must be thoroughly reviewed for fairness. Nonetheless, there is no doubt that attorneys may properly be given a portion of the settlement fund in recognition of the benefit they have bestowed on class members." *In re Ikon Office Solutions, Inc.*, 194 F.R.D. at 192. Here, the requested attorney's fees are in the amount of $1,318,863—representing 30 per cent of the settlement fund ($4,750,000) net the Committee's share ($250,000) plus reimbursement of out-of-pocket costs ($103,790). Application at ¶ 2. There are no objections.

 Class counsel's application is based on the percentage of recovery method, not the lodestar. "Under the lodestar, the court determines fees by multiplying the number of hours spent on the litigation by an appropriate hourly rate." *In re Ikon Office Solutions, Inc.*, 194 F.R.D. at 192. Our Court of Appeals has approved the percentage of recovery method in common fund cases, such as the present one. *In re General Motors Corp.*, 55 F.3d at 821 ("Courts use the percentage of recovery method in common fund cases on the theory that class would be unjustly enriched if it did not compensate the counsel responsible for generating the valuable fund bestowed on the class.").

The question in each case is what share of the recovery is appropriate. Factors to be considered are "the percentage likely to have been negotiated between private parties in a similar case, percentages applied in other class actions, the quality of class counsel, and the size of the award." *In re Ikon Office Solutions, Inc.*, 194 F.R.D. at 193 (citing *In re Prudential Ins. Co. of America Sales Practices Litigation*, 148 F.3d 283, 339 (3d Cir.1998)).

The recent *In re Ikon Office Solutions, Inc.* decision by Judge Katz of our Court, also a securities fraud partial class settlement, is helpful. "[P]laintiffs' counsel routinely negotiate agreements providing for between thirty and forty percent of any recovery." 194 F.R.D. at 193 (citations omitted). As to the second factor, "[t]he median in class actions is approximately twenty-five percent, but awards of thirty percent are not uncommon in securities class actions." *Id.* at 194 (citations omitted).

The performance of class counsel is "measured by 'the quality of the result achieved, the difficulties faced, the speed and efficiency of the recovery, the standing, experience and expertise of the counsel, the skill and professionalism with which counsel prosecuted the case and the performance and quality of opposing counsel.'" *Id.* (citing *In re Computron*, 6 F.Supp.2d 313, 323 (D.N.J.1998)). Here, this factor supports the proposed award. It is significant that class counsel did not have the benefit or assistance of an SEC or other regulatory investigation in prosecuting the case. *See id.* Also, almost every step taken by plaintiff class was opposed by Cogen, Sklar, defendant Lafferty (the underwriter), and all the individual defendants—including motions to dismiss, oppositions to class certification, numerous discovery disputes, and motions for reconsideration. Moreover, "securities actions have become more difficult from a plaintiff's perspective in wake of the PSLRA." *Id.* at 194. Class counsel produced a professional work-product, taking on a substantial risk of a relatively small recovery.

The size of the award, $4,500,000 gross, represents approximately 27 per cent of

the total damages. According to counsel, after fees and costs, class members would recover 18.4 per cent of their losses. Application at 10. This is a substantial recovery, particularly given the bankruptcy status of the issuer. However, the settlement is not so large as to justify reducing the percentage allocated to counsel. "Courts have generally decreased the percentage awarded as the amount recovered increases, and $100 million seems to be the informal marker of a 'very large settlement.'" *In re Ikon Office Solutions, Inc.*, 194 F.R.D. at 195 (citing *In re Prudential*, 148 F.3d at 339).

For these reasons, class counsel shall be entitled to receive 30 per cent of the net settlement fund.

Class counsel also applies for reimbursement of litigation costs. "'There is no doubt that an attorney who has created a common fund for the benefit of the class is entitled to reimbursement of ... reasonable litigation expenses from that fund.'" *Id.* at 192 (quoting *Lachance v. Harrington*, 965 F.Supp. 630, 651 (E.D.Pa.1997)). Counsel has submitted a detailed accounting of expenses totaling $103,789.66 (42 per cent of which consists of expert fees related to the evaluation of Cogen, Sklar's insurance coverage). Application at 3 (schedule of costs). This amount is reasonable and will be reimbursed.

The partial settlement with Cogen, Sklar is fair, reasonable and in the best interests of the class, and the requested attorney's fees and costs are warranted in light of the result obtained.

An order accompanies this memorandum.

### ORDER AND JUDGMENT APPROVING CLASS ACTION SETTLEMENT, CERTIFYING A SETTLEMENT CLASS, APPROVING A PLAN OF ALLOCATION AND AWARDING ATTORNEY'S FEES AND COSTS

This matter was heard on July 27, 2000 and August 8, 2000 by order of Court dated June 8, 2000 (hearing order preliminarily approving class action settlement, preliminarily certifying class for settlement purposes, approving notice and a plan for distributing notice and setting settlement hearing).

As required by the hearing order, proper notice was distributed by first-class mail, postage prepaid, to all members of the settlement class identified in the books and records of Equipment Leasing Corporation of America and the books and records of the Official Committee of Unsecured Creditors, and such persons were given the opportunity to present objections to the settlement to the Court; and

The Court having considered all papers filed and oral presentations of counsel at the hearings now enters the following findings and order approving the proposed settlement and requested attorney's fees and overrules defendants' objections:

1. The Court has jurisdiction over the class action, the portion of the actions that remains pending in this Court, and the parties, including but not limited to all of the class members.

2. Notice to the settlement class has been given in a sufficient manner under Rules 23(c) and (e) of the Federal Rules of Civil Procedure and the principles of due process.

3. The settlement is the product of good faith, arm's-length negotiations between the settling parties and is fair, reasonable, and just and is in the best interests of the settlement class and is approved in its entirety.

4. The requirements of Fed.Rule Civ.P. 23 have been met, the class preliminarily certified for settlement purposes in the hearing order is permanently certified, for purposes of settlement only, as follows:

All persons and entities included in the class certified by the Court pursuant to the Order entered in the Class Action on

or about November 24, 1998, all persons who purchased, rolled over, or otherwise acquired any ELCOA Certificates during the Class Period, and any additional person(s) or entity(ies) who own any Released Claims and have legal right to bring them. The "Settlement Class" does not include any of the Shapiro Related Parties and/or any of the Non Settling Defendants or any member of their immediate families or any business or trust in which they have a controlling grantor or beneficiary interest.

5. The settling parties shall comply with all the terms of this order and the stipulation.

6. No persons have filed a timely request for exclusion from the settlement class.

7. The representative plaintiffs, the Committee by the Liquidating Trust, and the class members, on their own behalf and on behalf of the settlement class, as of the settlement effective date, conclusively shall be deemed to have released and discharged the settled claims as against the released parties, as those terms are defined in the stipulation.

8. The class action and the portion of the debtor's action pending in this Court are dismissed with prejudice as to defendant Cogen, Sklar, L.L.P. (Cogen).

9. All claims, counterclaims, crossclaims and/or third-party claims asserted herein by Cogen against any other are hereby dismissed with prejudice, and Cogen is permanently and forever barred, pursuant to 15 U.S.C. § 78u–4(7)(A)(ii), from filing, commencing, instituting, prosecuting, or maintaining any claim for contribution against any party with respect to the transactions and occurrences referred to in the plaintiffs' complaints.

10. All parties to the litigation are permanently and forever barred and enjoined from filing, commencing, instituting, prosecuting, or maintaining, either directly, indirectly, representatively, or in any other capacity, any claim, counterclaim, crossclaim, third-party claim or other action arising out of the settled claims and/or the transactions and occurrences referred to in the plaintiffs' complaints (including, without limitation, any claim or action seeking indemnification and/or contribution, however denominated) against Cogen or any of the released parties, whether such claims are legal or equitable, known or unknown, foreseen or unforeseen, matured or unmatured, accrued or unaccrued.

11. Should any party violate the terms of paragraph 10 of this order and judgment (the bar order), the party or parties protected by its terms may apply to this Court for a finding of contempt or other appropriate relief against the violating party, and may recover costs and reasonable attorney's fees for such an application and/or for responding to or moving against any pleading or other paper served or filed in violation of its terms.

12. If, following a trial, any plaintiff or any class member obtains a judgment, award or recovery against any of the nonsettling defendants, any of the Shapiro-related parties, or any other person on any claims asserted in, relating to, or arising out of the subject-matter of the litigation for which Cogen or any of the released parties would or could be liable by a claim for contribution or indemnity but for the provisions of this order and judgment, each such plaintiff or class member shall reduce his, her or its judgment, award or recovery against such person in accordance with the applicable law or, in the absence of a statute, by the greater of: (i) an amount equal to the settlement fund; (ii) the pro rata share of the released parties; or (iii) in the event that the doctrine of comparative negligence is held applicable, by the amount, percentage or share of such judgment, award or recovery (if any) lawfully attributable by the Court or a jury to Cogen and/or any of the released parties.

13. The plan of allocation described in the stipulation is approved.

14. The representative plaintiffs' requests for attorney's fees and costs is approved. Class counsel shall receive fees equal to thirty (30) per cent of the settlement fund, plus costs in the amount of $103,789.66.

15. Upon the settlement effective date, class counsel and/or settlement administrator may begin to distribute payments to class members in accordance with the approved plan of allocation and this order approving attorney's fees and costs. Any interest remaining in the settlement bank account after all checks have been cashed shall be held for an additional period of up to ninety (90) days and applied to meet any additional expenses in connection with the settlement or its administration or implementation. Any money remaining at that time shall be contributed to a charity to be agreed upon by the parties and approved by the Court.

16. The Court directs entry of this order as a final judgment.

17. Neither the terms of the stipulation nor the settlement, nor any act performed or executed pursuant to or in furtherance of the stipulation and settlement is or may be deemed to be or may be used as an admission of or evidence of the validity or amount of any settled and/or released claims.