**Mary R. MACHULSKY, Plaintiff,**

**v.**

**David HALL a/k/a score 900 a/k/a Robert D. Hall; Rich Russo a/k/a diesoon; Steven Leibrandt a/k/a busterlye; Larry Steinberg a/k/a jackblack210; Joseph Denish a/k/a aaaaabvz; Robert Burton a/k/a rb345 Richard Brzozowski a/k/a Buddhakkhan; Rick D. Jones a/k/a rickdjones@aol.com; Norman Knaak a/k/a bidoveru; and John and Jane Does, 1–100, Defendants.**

Civil Action No. 01–4444(SSB).

United States District Court,
D. New Jersey.

July 9, 2002.

Mary R. Machulsky, Esquire, Sewell, NJ, Plaintiff, Pro Se.

Jonathan B. Freeman, Esquire, Cherry Hill, NJ, Attorney for Defendants David Hall and Norman Knaak.

Joseph P. Grimes, Esquire, Grimes & Grimes, LLC, Cherry Hill, NJ, Attorney for Defendant Steven Leibrandt.

Joseph Denish, Peabody, MA, Defendant, Pro Se.

Samuel J. Myles, Esquire, Holston, MacDonald, Uzdavinis & Ziegler, Woodbury, NJ, Attorney for Defendants Richard Brzozowski and Larry Steinberg.

Richard D. Jones, CPA, Houston, TX, Defendant, Pro Se.

## OPINION ON DEFENDANTS' MOTIONS TO DISMISS

BROTMAN, District Judge.

Presently before the Court, pursuant to Fed.R.Civ.P. 12, are three Motions to Dismiss filed by Defendants Steven Leibrandt a/k/a busterlye ("Leibrandt"), Norman Knaak a/k/a bidoveru, and David Hall a/k/a score 900 ("Hall") (collectively "Defendants"). Mary Machulsky, Esquire, ("Plaintiff" or "Machulsky") has filed opposition to all of the above Motions.

For the reasons stated in this Opinion, the Court grants the Motions to Dismiss filed by Defendants solely on the basis that the Court lacks personal jurisdiction over them, finding that Machulsky fails to prove that Defendants' minimum contacts with the State of New Jersey are sufficient to subject them to the jurisdiction of the Court.

## I. INTRODUCTION

This litigation arises out of online commercial transactions between Mary Machulsky and Defendants Leibrandt, Knaak, and Hall, as well as other defendants not parties to these motions. Machulsky, a/k/a "samrus2," is a citizen and resident of New Jersey who operated a coin business on the internet auction Web site, eBay, located at http://www.ebay.com. (Machulsky Decl. I ¶ 3; Ex. A.) Founded in September 1995, eBay is the leading online marketplace for the sale of goods and services of individuals and businesses. *See* Company Overview, *available at* http://pages.ebay.com/community/aboutebay/overview/index.html (visited June 27, 2002). After having engaged in transactions with Machulsky, Defendants filed private and public complaints via email and eBay online feedback forums. (Knaak Aff. ¶ 14; Hall Aff. ¶ 15; Leibrandt Aff. Ex. E.) Machulsky alleges that Defendants Leibrandt, Knaak, and Hall conspired with other eBay users to defame her and cause her economic injury by ruining her eBay coin business. (Machulsky Decl. I ¶ 22; Decl. II ¶ 13.) The Court has federal question jurisdiction over this matter by virtue of Machulsky's claims under the Civil Racketeering Act ("RICO"), 18 U.S.C. § 1961 and 1962(c) & (d).

## II. FACTUAL BACKGROUND

### A. Defendants' EBAY Transactions with Machulsky

#### 1. Defendant Steven Leibrandt

Steven Leibrandt is a citizen and resident of the state of Oregon, and has never visited nor maintained any business interests in New Jersey. (Leibrandt Aff. ¶¶ 1–2.) On May 25, 2001, he sent an email to Machulsky requesting information about a 1981 Type II U.S. Mint Proof Set (herein-

after "Type II Set") that Machulsky offered for sale, prior to his successful bid on the item. (Machulsky Decl. ¶ 6; Ex. B.) After receiving confirmation that he posted the winning bid, he sent an email to Machulsky to request payment information, to which she responded. (Machulsky Decl. ¶¶ 9, 10.) Leibrandt then paid in cash, authorizing a direct withdrawal from his checking account through PayPal, an online credit card processing company. (Leibrandt Supp. Aff. ¶ 2.); *See generally* http://www.paypal.com. All of Defendant's subsequent communications with Machulsky occurred via email.[1] (Leibrandt Aff. ¶ 4.)

On June 4, 2001, Machulsky informed Leibrandt that she shipped the Type II Set. (Machulsky Decl. ¶ 14.) On June 11, 2001, Leibrandt contacted her to acknowledge receipt of her shipment, but informed her that he did not receive the item which he originally purchased, instead having a received a "Type I" set. Leibrandt stated that he would return the wrongfully shipped item and requested return information. (*Id.* at ¶ 15.)

On June 18, 2001, Leibrandt returned the Type I Set to Machulsky, subsequently emailing her on June 20 and 21, 2001 to inquire whether she received the returned coin set. (Leibrandt Supp. Aff. ¶ 4; Machulsky Decl. ¶¶ 16, 17.) She responded that he did not return the set originally sent to him, and stated that she would issue a refund only upon return of the correct set. (*Id.* at ¶ 24.) No refund was issued. (Leibrandt Supp. Aff. ¶ 5.)

On June 30, 2001, Leibrandt posted two negative comments about Machulsky's merchandise and customer service on eBay's customer "feedback" page. (Leibrandt Aff. ¶ 8; Reply Br. Ex. E.) On July 4, 2001, he emailed Machulsky to notify her that he would file a fraud complaint with eBay if she refused to refund his money (Machulsky Decl. ¶ 18),[2] and, he further threatened to initiate litigation and submit a complaint to the Better Business Bureau of New Jersey, (*Id.* Ex. J), but did not carry out these purported threats. This was the beginning of a series of exchanges between Machulsky and Leibrandt.[3]

---

1. In his supplemental affidavit, Leibrandt claims that on July 20, 2001, he twice telephoned Machulsky, connected to her answering machine, and left a voice message. (Leibrandt Supp. Aff. ¶ 16.) Machulsky challenges this mention of a telephone call as an "additional fact" which is inconsistent with his initial pleading. On January 25, 2001, she sent a letter to the Court requesting that the Court grant her permission to file a sur-reply, alternatively asking that the Court strike his Reply Brief from the record on the premise that his submission of "additional facts" was "patently unfair." The Court denies Machulsky's request to file a sur-reply because, aside from this additional fact, the Court's review of the pertinent facts strongly supports a finding that such "additions" either reply to issues raised in Machulsky's opposition or corroborate facts contained in Leibrandt's initial pleadings, thereby not raising any "new" issues. In deference to Machulsky, however, the Court will not consider portions of Leibrandt's reply that raise new facts not contained or referenced in his initial pleading. *See, e.g. Bayer AG v. Schein Pharmaceutical*, 129 F.Supp.2d 705, 716 (D.N.J.2001). In any event, the documents proffered in Leibrandt's reply are not dispositive on the issue of whether personal jurisdiction exists as to Defendant Leibrandt, and, therefore do not constrain the Court from coming to a determination in this matter.

2. This occurred on July 7, 2001, and eBay forwarded Leibrandt's claim to its insurance carrier, Lloyds of London. (Machulsky Decl. Ex. J, K; Leibrandt Supp. Aff. ¶ 8). He also filed a claim with PayPal. (*Id.*).

3. On July 6, 2001, Leibrandt, still not having received his requested refund from Machulsky, informed her that other dissatisfied customers had contacted him suggesting the possibility of a class action lawsuit against her.

After reading Leibrandt's comments regarding Machulsky on eBay's feedback forum, Defendants Hall, Steinberg, and Joe Denish contacted him seeking additional information, and, he exchanged between three and four emails with each of them regarding his transaction. (Leibrandt Supp. Aff. ¶ 17.)

In response to Machulsky's claim that Leibrandt tried to cause financial injury to her online coin business, Leibrandt claims that he never targeted New Jersey residents to cause damage to Machulsky or her business, and, with the exception of his postings on the eBay "feedback" forum, he did not engage any further online discussion concerning Machulsky. (*Id.* ¶¶ 23, 26.)

## 2. *Defendant Norman Knaak*

Norman Knaak is a citizen and resident of the state of Alaska, and has never entered nor conducted any business in New Jersey. (Knaak Aff. ¶¶ 1–3.) Machulsky claims, however, that Knaak has "substantial business contacts and interests in New Jersey," and has "sold many thousands of dollars of goods to individuals. in this State." (Machulsky Decl. I ¶ 11.) In support, she cites completed auctions and comments posted on eBay rating Knaak as a seller. (Machulsky Decl. I Ex. B.)

Knaak, employing the user name "bidoveru," made four separate eBay purchases from Machulsky totaling $330.00. (Machulsky Decl. I at 1; Knaak Aff. ¶ 5.) He avers that he was unaware of Machulsky's location when he placed his bids. (Knaak Aff. ¶ 6.) Machulsky refutes this statement, however, contending that he must have been aware because the item's location is displayed on a "listing page" which directly precedes bidding on an eBay item.[4] (Machulsky Decl. I ¶ 16.)

Knaak paid by PayPal and signed for the package upon delivery, but states that he never received the items that Machulsky sold to him. (Machulsky Decl. I Ex. E; Knaak Aff. ¶¶ 9, 10.) He filed an eBay fraud report, later received an empty envelope from Machulsky, and then filed a postal fraud report with the United States Postal Service. (Knaak Aff. ¶¶ 11–13.) Thereafter, in accordance with eBay rules and regulations, he posted a negative comment concerning Machulsky's eBay seller profile. (*Id.* at ¶ 14.) Machulsky claims that Knaak was part of an "Enterprise" to defraud her, contends that he made false claims to PayPal, never filed a postal fraud report, and that he falsely claimed that he received an empty package.[5] (Machulsky Decl. I ¶¶ 21, 28–30.)

---

(Machulsky Decl. Ex. K.) He also sent her an email on July 23, 2001, again mentioning the possible fraud suit against her. (Machulsky Decl. Ex. L.)

**4.** Regarding Knaak's knowledge, Machulsky further states he. was aware of her location because: (1) following the auction she sent him an email containing her New Jersey address, (Machulsky Decl. I ¶ 18), and (2) her address is listed on the PayPal Business Information page. (Machulsky Decl. I Ex. C.) She alleges that Knaak made numerous telephone calls to her and other New Jersey residents, but provides no proof of such communication. (Machulsky Decl. I ¶ 25.) Knaak avers that all communication following the auction was

by email, including email sent by Knaak to Machulsky containing shipping information and in. response to Machulsky's email informing him of her lawsuit. (Knaak Aff. ¶ 7; Machulsky Decl. I Ex. F.)

**5.** Machulsky further alleges that Knaak: filed false claims with New Jersey state agencies, contacted bidders living in New Jersey, sent threatening letters to her, filled out magazine subscriptions in her name, and participated in or authorized numerous other acts to defraud her. (Machulsky Decl. I ¶¶ 40–45.) She cites Exhibits G through N to support these allegations, which provide evidence of other defendants' acts, but do not specifically mention Knaak by name.

### 3. *Defendant David Hall*

Robert D. Hall is a citizen and resident of the state of Georgia and has never entered New Jersey nor maintained any business interests therein. (Machulsky Decl. II at 1; Hall Aff. ¶¶ 1–2.) On June 9, 2001, he purchased a 1911 Liberty Head Nickel from Machulsky for $31.00, attesting that he was unaware of Machulsky's location when he placed his bid. (Hall Aff. ¶¶ 5–6.)

Machulsky claims that Hall was aware of her New Jersey location both before and after the auction, citing in support: (1) the eBay "Listing Page" indicating New Jersey as the location of the item (Machulsky Decl. I Ex. A); (2) an email she sent to Hall containing her New Jersey address after the auction (Machulsky Decl. II Ex. O); (3) an envelope Hall sent to her New Jersey address (Machulsky Decl. II Ex. P); and, (4) "unsolicited grading information" of coins that Hall sent to her in New Jersey. (Machulsky Decl. II ¶ 10; Ex. Q.)

Hall maintains that all of his communications with Machulsky were via email. (Hall Aff. ¶ 8.) Because he was dissatisfied with the quality of the item which he received from Machulsky, he returned it to her on June 25, 2001. (*Id.* ¶ 11.) On four separate occasions following his return of the item, he requested a refund via email. (Hall Aff. Ex. B, C, D, E.) Thereafter, he posted a negative comment on an eBay forum regarding his transaction. (*Id.* Ex. F.)

Machulsky claims that Hall is one of the main organizers of the "Enterprise" established to disrupt her eBay business. She claims that Hall required members of the conspiracy to file fraudulent complaints with New Jersey state agencies and alleges that he directed members of the conspiracy to contact all of her past and potential eBay bidders, some of whom are New Jersey residents. (Machulsky Decl. II ¶ 13.) In support, she cites emails that Hall sent to a large group of individuals discussing attempts to contact other eBay users and containing an eBay Web site link listing avenues of recourse for fraud victims. (Machulsky Decl. II at Ex. G, J.)

## III. *PROCEDURAL BACKGROUND*

On September 19, 2001, Machulsky filed an eight count Complaint against Defendants.[6] On January 8, 2002, Leibrandt filed a Motion to Dismiss under Fed. R.Civ.P. 12(b)(1),(2) for lack of subject matter and personal jurisdiction. On March 6, 2002, Knaak and Hall filed motions to dismiss for lack of personal and subject matter jurisdiction and for failure to state a claim pursuant to Fed.R.Civ.P. 12(b)(1), (2), and (6).

## IV. *DISCUSSION*

### A. *DEFENDANTS LEIBRANDT, KNAAK, AND HALL'S MOTIONS TO DISMISS*

Defendants bring their respective motions on numerous grounds found in Fed. R.Civ.P. 12, and, the Court must first determine on what basis to address these motions. Under appropriate circumstances, a district court may dismiss a case due to lack of personal jurisdiction without first deciding the issue of subject matter jurisdiction. *Lehigh Coal & Navigation Co. v. Geko–Mayo, GmbH,* 56 F.Supp.2d 559, 562 (E.D.Pa.1999) (citing *Ruhrgas AG*

---

**6.** Machulsky alleges that Defendants' acts amount to the following: (1) violations of 18 U.S.C. §§ 1961 and 1962(c)-(d) (2000) through the predicate acts of mail fraud, wire fraud, and extortion; (2) conspiracy; (3) tortuous interference with prospective economic advantage; (4) intentional infliction of emotional distress; (5) libel; (6) slander of attorney; (7) slander and imputation of crime; and (8) fraud and deceit.

*v. Marathon Oil Co.*, 526 U.S. 574, 119 S.Ct. 1563, 143 L.Ed.2d 760 (1999)). "Where a district court has before it a straightforward personal jurisdiction issue ... and the alleged defect in subject-matter jurisdiction raises a difficult and novel question, the court does not abuse its discretion by turning directly to personal jurisdiction." *Ruhrgas*, 526 U.S. at 588, 119 S.Ct. 1563. Here, deciding the issue of subject matter jurisdiction before addressing the issue of personal jurisdiction requires an analysis of the application of federal RICO laws against multiple, geographically diverse defendants alleged by Machulsky to have engaged in racketeering activities via the Internet, whereas the issue of personal jurisdiction is a relatively straightforward issue for the Court. Finding it unnecessary to address the issue of subject matter jurisdiction, the Court therefore reaches its decision in this case solely on the basis of personal jurisdiction.

### 1. Standard of Review for Motion to Dismiss for Lack of Personal Jurisdiction

■ "When a defendant raises the defense of the court's lack of personal jurisdiction, the burden falls upon the plaintiff to come forward with sufficient facts to establish that jurisdiction is proper." *Mellon Bank (East) P.S.F.S. v. Farino*, 960 F.2d 1217, 1223 (3d Cir.1992). In ruling upon a motion to dismiss, courts must accept the plaintiff's allegations as true and construe disputed facts in favor of the plaintiff. *Carteret Savings Bank, F.A. v. Shushan*, 954 F.2d 141, 142 n. 1 (3d Cir. 1992). Still,

> a Rule 12(b)(2) motion, such as the motion made by the defendants here, is inherently a matter which requires resolution of factual issues outside the pleadings, i.e. whether in personam jurisdiction actually lies. Once the defense has been raised, then the plaintiff must sustain its burden of proof in establishing jurisdictional facts through sworn affidavits and competent evidence ... [A]t no point may a plaintiff rely on the bare pleadings alone in order to withstand a defendant's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. Once the motion is made, plaintiff must respond with actual proofs, not mere allegations.

*Patterson v. Federal Bureau of Investigation*, 893 F.2d 595, 603–04 (3d Cir.1990) (citation omitted) (quoting *Time Share Vacation Club v. Atlantic Resorts, Ltd.*, 735 F.2d 61, 67 n. 9 (3d Cir.1984)).

A plaintiff can meet the burden of proof and present a prima facie case for the court's exercise of personal jurisdiction by " 'establishing with reasonable particularity sufficient contacts between the defendant and the forum state.' " *Id.* (quoting *Provident Nat. Bank v. Cal. Fed. Sav. & Loan Ass'n*, 819 F.2d 434 (3d Cir.1987)).

### 2. Traditional Personal Jurisdiction

Pursuant to Fed.R.Civ.P. 4(e), federal "district courts have personal jurisdiction over non-resident defendants to the extent authorized under the law of the forum state in which the district court sits." *Sunbelt Corp. v. Noble, Denton & Associates, Inc.*, 5 F.3d 28, 31 (3d Cir.1993). Because New Jersey's long arm statute permits the assertion of personal jurisdiction as far as is permitted under the Fourteenth Amendment to the United States Constitution N.J. Ct. R. 4:4–4; *Carteret*, 954 F.2d at 145, federal constitutional law must be applied to determine whether the Court has personal jurisdiction over Defendants. *Decker v. Circus Circus Hotel*, 49 F.Supp.2d 743, 746 (D.N.J.1999).

A court may assert personal jurisdiction over a defendant when it possesses either general or specific jurisdiction. *See Heli-*

*copteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–15, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984). General jurisdiction allows a court to assert personal jurisdiction over an out-of-state defendant when "that party can be called to answer any claim against her, regardless of whether the subject matter of the cause of action has any connection to the forum." *Barrett v. Catacombs Press,* 44 F.Supp.2d 717, 723 (E.D.Pa.1999) (quoting *Mellon Bank,* 960 F.2d at 1221).

■ The assertion of general jurisdiction over non-forum related activities is proper when the defendant has engaged in "systematic and continuous" activities in the forum state. *Barrett,* 44 F.Supp.2d at 723 (citing *Helicopteros,* 466 U.S. at 414–16, 104 S.Ct. 1868). This is not the case here, because Machulsky's allegations imply that she is claiming specific jurisdiction over Defendants, and, in any event, the record does not support a finding of general jurisdiction based on Defendants' limited contacts. Thus, the Court construes Machulsky's claims as conferring specific jurisdiction over the defendants.

Specific jurisdiction applies when the relationship between "the defendant, the cause of action, and the forum falls within the 'minimum contacts' framework announced in *International Shoe Co. v. Washington,* 326 U.S. 310, 66 S.Ct. 154, 90 L.Ed. 95 (1945), later refined by the abundant progeny of that landmark case." *Barrett,* 44 F.Supp.2d at 723, (quoting *Mellon Bank,* 960 F.2d at 1221). *International Shoe* established the principle that under the Fourteenth Amendment's Due Process Clause, "a court may not assert personal jurisdiction over a nonresident defendant who does not have 'certain minimum contacts with [the forum] such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice.'" *A.V. Imports, Inc. v.*

*Col De Fratta, S.p.A.,* 171 F.Supp.2d 369, 371 (D.N.J.2001) (citing *Provident Nat'l Bank v. Cal. Fed. Sav. & Loan Ass'n,* 819 F.2d 434, 436 (3d Cir.1987)) (quoting *Int'l Shoe,* 326 U.S. at 320, 66 S.Ct. 154).

Under a minimum contacts analysis, the court must decide whether the defendants' contacts with the forum state are such that the defendants "should reasonably anticipate being haled into court there." *A.V. Imports, Inc.,* 171 F.Supp.2d at 371 (quoting *World–Wide Volkswagen Corp. v. Woodson,* 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). A critical aspect of this determination is "that there be some act by which the defendant purposely avails itself of the privilege of conducting activities with the forum State, thus invoking the benefits and protections of its laws." *Id.* (quoting *Hanson v. Denckla,* 357 U.S. 235, 253, 78 S.Ct. 1228, 2 L.Ed.2d 1283 (1958)).

### 3. Personal Jurisdiction Arising from Internet Activity

The issue of personal jurisdiction based on internet activity is a relatively new issue for the federal courts. *Barrett v. Catacombs Press,* 44 F.Supp.2d 717, 724 (E.D.Pa.1999). In analyzing a defendant's minimum contacts, the court must assess the nature and quality of a defendant's internet activity. *Id.; see Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (W.D.Pa.1997); *see also ALS Scan, Inc. v. Digital Service Consultants, Inc.,* 293 F.3d 707, 714 (4th Cir.2002) (adopting *Zippo* Model).

■ Internet sites have been categorized in three ways, according to interactivity levels: (1) interactive sites used to conduct business over the Web; (2) semi-interactive sites allowing the exchange of information with a host computer; and, (3) passive sites allowing access to information but not enabling the exchange of informa-

tion with a host computer. *Amberson Holdings, L.L.C. v. Westside Story Newspaper*, 110 F.Supp.2d 332, 336 (D.N.J. 2000). When a defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. *Desktop Tech., Inc. v. Colorworks Reprod. & Design*, Civil Action No. 98–5029, 1999 WL 98572, *3 (E.D.Pa. Feb.25, 1999). When a defendant's internet use involves exchanging information with a host computer, the court must examine the level of interactivity and commercial nature of the exchange in order to determine the propriety of exercising personal jurisdiction. *Id.* When a defendant merely posts information or advertisements on a Web site, however, personal jurisdiction over such defendant is not proper. *Id.*

### a. *Transacting Business: Contracts and Purchases*

■ Generally, the act of entering into a contract within a foreign jurisdiction, without more, cannot serve as a basis for asserting personal jurisdiction over a nonresident defendant. *Amberson Holdings*, 110 F.Supp.2d at 335 (citing *CompuServe, Inc. v. Patterson*, 89 F.3d 1257, 1264 (6th Cir. 1996)). "Traditionally, additional factors ... such as the duration of a defendant's relationship with the respective state must also be taken into account." *Id.* These factors include the nature and extent of a defendant's commercial and business transactions *vis-a-vis* the forum state through the Internet. *See Desktop Tech.*, 1999 WL 98572, at *5; *Barrett*, 44 F.Supp.2d at 724–25.

Courts in the Third Circuit have not specifically stated whether a defendant's single purchase of an item via the Internet, without more, suffices as a premise upon which a state may exercise personal juris-

diction over that defendant. However, decisions in this area of law indicate that commercial activity via the Internet must be substantially more regular and pervasive to constitute "purposeful availment of doing business" within a given state. *Compare Desktop Tech.*, 1999 WL 98572, at *5–*6 (finding in internet advertising case where the defendant's internet presence and e-mail link are its only contacts with Pennsylvania, that there must be "something more" than simply registering someone else's trademark as a domain name and posting a Web site on the Internet to demonstrate that the defendant directed its activity towards the forum state) *with Zippo*, 952 F.Supp. at 1125–26 (exercise of personal jurisdiction found proper because defendant contracted online with seven Internet access providers and approximately 3,000 individuals within the forum); *CompuServe, Inc.*, 89 F.3d at 1264 (defendant had "substantial connection" with forum state when he purchased computer network service via an online contract, transmitted software via the Internet to computer server within the forum, and advertised and sold his product via that system).

### b. Email Correspondence

The Third Circuit has held that "telephone communications or mail sent by a defendant [do] not trigger personal jurisdiction if they 'do not show purposeful availment.'" *Barrett*, 44 F.Supp.2d at 729 (quoting *Mellon Bank*, 983 F.2d at 556). In *Barrett*, the court held that email communications must occur within the context of other "substantial" connections to the forum in order to constitute purposeful availment, noting that "minimal correspondence alone will not satisfy minimum contacts." *See id.* at 729; *see also Blumenthal v. Drudge*, 992 F.Supp. 44, 54–56 (D.D.C.1998) (exercise of personal jurisdiction found proper where defendant main-

tained an interactive web site, traveled to the forum, and contacted residents of foreign jurisdiction via email, telephone, and mail). The court in *Barrett* found that the exchange of three emails between the plaintiff and defendant regarding the contents of the defendant's Web site, without more, did not "amount to the level of purposeful targeting required under the minimum contacts analysis." *Id.*

### c. *Tortious Internet Activity: Libel and Defamation*

In *Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L.Ed.2d 804 (1984), the United States Supreme Court adopted an "effects test" to determine when a nonresident defendant's publication of allegedly libelous material can subject such defendant to personal jurisdiction. The test focuses on "the extent to which [a] Defendant's tortious conduct is aimed at or has effect in the forum state." *Barrett,* 44 F.Supp.2d 717, 729–30 (E.D.Pa.1999). The United States Supreme Court found in *Calder* that a California court properly exercised personal jurisdiction over defendant employees of a Florida-based national newspaper in a libel suit against them by a professional television entertainer who lived and worked in California because "defendants knew that California would be the focal point of the injuries" resulting from their allegedly libelous article. 465 U.S. at 789–90, 104 S.Ct. 1482. A dispositive factor in *Calder* was that approximately 600,000 copies of the magazine were sold in the forum state. *Id.* at 786, 104 S.Ct. 1482; *see also Keeton v. Hustler Magazine,* 465 U.S. 770, 104 S.Ct. 1473, 79 L.Ed.2d 790 (1984) (holding that defendant publisher's circulation of a national magazine containing libelous information within the forum state constituted sufficient minimum contacts).

In the Third Circuit, a plaintiff must establish the requisite elements of the *Calder* "effects test." *Barrett,* 44 F.Supp.2d at 730 (citing *IMO Indus., Inc. v. Kiekert AG,* 155 F.3d 254, 265–66 (3d Cir.1998)). They are: (1) the defendant must commit an intentional tort; (2) the plaintiff must feel the brunt of the harm in the forum such that the forum can be said to be the focal point of the harm suffered by plaintiff as a result of the tort; and, (3) the defendant must expressly aim his or her tortious conduct at the forum such that the forum can be said to be the focal point of the tortious activity. *Id.*

The court in *Barrett* applied the "effects test" to tortious internet conduct. *Id.* It declined to exercise jurisdiction over a nonresident defendant for posting allegedly libelous information about a Pennsylvania plaintiff on an interactive Web site message board because the plaintiff failed to show that defendant's comments specifically targeted him in his local capacity as a Pennsylvania psychiatrist or that defendant targeted internet users in Pennsylvania. *Id.* at 729. The defendant's alleged defamatory statements "[concerned only] the plaintiff's non-Pennsylvania activities and [impugned] his professionalism as a nationally-recognized consumer health advocate." *Id.* at 731. The court further noted that, while "Pennsylvania residents [are] among the recipients or viewers of such defamatory statements, they are but a fraction of other worldwide Internet users who have received or viewed such statements." [7] *Id.* Mere allegations that a

---

7. In *Amberson Holdings,* the court noted:

 [The] Internet is a vast and expanding global resource. Through the World Wide Web, private individuals and corporations alike

 can make information and products available to almost anywhere in the world, without ever leaving their respective state.... If courts were to deem that the mere accessi-

plaintiff feels the effects of a defendant's tortious conduct in the forum, simply because plaintiff resides there, do not satisfy the "effects test." *Id.* (citing *IMO*, 155 F.3d at 263).

More recently, in *English Sports Betting, Inc. v. Tostigan*, 2002 WL 461592 (E.D.Pa. Mar.15, 2002), the U.S. District Court for the Eastern District of Pennsylvania, applying the effects test, found that a Virginia Web site operator published allegedly defamatory articles about the plaintiff, an offshore gambling business owner residing in Pennsylvania. *Id.* at *1. The plaintiff attempted to establish jurisdiction based primarily on the effects test due to the articles' discussion of the plaintiff's criminal background in Pennsylvania. *Id.*

The court held that the effects test was not satisfied because, "[t]he recipient audience is not linked by geography but by a common interest in off-shore sports gambling," further stating that even if it could be proven that the brunt of the harm was suffered in Pennsylvania, there was no proof that the defendant's tortious conduct was expressly aimed at Pennsylvania. *Id.* at *3. It further found that "[t]here is a difference between tortious conduct targeted at a forum resident and tortious conduct expressly aimed at the forum," and the court held that the former is not sufficient to satisfy the effects test. *Id.*

Another key component of the court's holding in *English Sports Betting, Inc.* is that "[i]t is not sufficient that the brunt of the harm falls within plaintiff's home forum, even when this was reasonably foreseeable." *Id.* Although the defendant published information that could potentially

have a significant impact on the plaintiff's Pennsylvania residence, the court declined to exercise personal jurisdiction based on the effects test. *Id.* Foreseeability of harm was not enough.

If a defendant's minimum contacts are found to be sufficient under either minimum contacts analysis or the effects test, the court must consider whether the exercise of specific personal jurisdiction over the defendant comports with traditional notions of fair play and substantial justice. *Int'l Shoe*, 326 U.S. at 320; 66 S.Ct. 154. If minimum contacts are not established, the court does not reach this second prong of specific jurisdiction. *See, e.g., Barrett*, 44 F.Supp.2d at 731 (noting that "the exercise of personal jurisdiction over non-commercial on-line speech that does not purposefully target any forum would result in hindering the wide range of discussion permissible on ... discussion groups and Web sites that are informational in nature").

#### i. *Defendant Leibrandt*

■ In light of the foregoing principles, the Court finds that Machulsky fails to establish that Leibrandt has sufficient minimum contacts with the state of New Jersey to justify the Court's exercise of personal jurisdiction over him. Although eBay is an interactive web site which allows users to engage in commercial transactions and exchange information with others via its host server, Leibrandt's single purchase from Machulsky through eBay does not constitute the requisite "purposeful availment of doing business" within New Jersey such that the exercise of specific jurisdiction over Defendant would be appropriate. Unlike the defendants in

bility of a website could establish the necessary 'minimum contacts' to subject a defendant to personal jurisdiction ... there would not be the 'degree of predictability' to the legal system that allows potential

defendant[s] to structure their primary conduct with some minimum assurance as to where that conduct will and will not render them liable to suit.
110 F.Supp.2d at 336 n. 2.

*Zippo* who contracted online with approximately 3,000 individuals within the forum, Leibrandt engaged in only one commercial transaction via eBay and this single purchase, without more, is not a sufficient premise upon which the Court can exercise personal jurisdiction.

Leibrandt's email correspondence with Machulsky relating to his single purchase also did not occur within the context of other substantial connections to the forum. He has never traveled to New Jersey, and Machulský fails to make a prima facie showing that he has engaged in a substantial amount of transactions with her or other New Jersey residents via the eBay service. (Leibrandt Aff. ¶ 2–4.) Such minimal correspondence with Machulsky, by itself or even in conjunction with his single purchase, does not constitute sufficient minimum contacts.

Machulsky claims that Leibrandt's posting of libelous and defamatory material on eBay's "feedback" web page concerning her products and customer service as an eBay seller, in addition to circulating libelous email about her, constitutes an alternative basis for jurisdiction, contending that this establishes a substantial connection to New Jersey. Yet, she fails to show that Leibrandt purposefully directed such published statements toward her as either a businesswoman or attorney in New Jersey, toward other New Jersey residents, or toward the state itself. In essence, Leibrandt posted statements to a global audience and did not target specifically any of Machulsky's potential customers in New Jersey, such that she could legitimately claim to have felt the effects of his libelous statements as a local New Jersey businesswoman or attorney under the *Calder* "effects test." (*See* Leibrandt Supp. Aff. Ex. E.) (Stating "BEWARE! Satifact. Guar my A____! Returned THEIR SUSPECT pf. set. No refund!!"); *Amberson Hold-*

*ings, supra* note 7. Machulsky further fails to show that Leibrandt's email correspondence has reached any New Jersey resident except her (*See* Leibrandt Supp. Aff. ¶ 17) (emails to other defendants), thus failing to satisfy the "purposeful targeting" requirement of the *Calder* "effects test."

Machulsky claims that Leibrandt's threat of instituting litigation verifies his anticipation of being haled into court in New Jersey. (Machulsky Dec. ¶¶ 20–22.) Yet, he never filed suit in New Jersey; she does not present any competent evidence that he filed a complaint against her with the Better Business Bureau of New Jersey (Machulsky Dec. Ex. J, K, L, S); and she does not furnish any evidence that Leibrandt actively sought or attained the assistance of any organizations, departments, or agencies in New Jersey at any time. Accordingly, the Court finds that Leibrandt has not invoked the benefits and protections of the laws of New Jersey sufficient for the Court to exercise personal jurisdiction as a defendant.

For the foregoing reasons, the Court grants Leibrandt's Motion to Dismiss for lack of personal jurisdiction.

### ii. *Defendant Knaak*

Knaak is also not subject to the Court's personal jurisdiction due to his limited internet business activities. As noted in *Zippo*, the nature and quality of the defendant's Internet activity is vital to the court's assertion of personal jurisdiction in each case. *Zippo Mfg. Co.*, 952 F.Supp. at 1124. Here, Knaak's four eBay purchases from Machulsky totaling $330.00 do not constitute a sufficient level of business activity to subject him to personal jurisdiction. His actions are distinguishable from cases like *CompuServe, Inc.*, where the defendant's significant business activities over the Internet and long-stand-

ing relationship with the plaintiff subjected him to personal jurisdiction.

Knaak's alleged tortious acts via the Internet further do not satisfy the effects test, comparing more to those of the defendant Web site operator in *Barrett*, found not subject to personal jurisdiction for posting defamatory material on passive Web sites, posting links to those Web sites on national discussion groups, and sending two emails to the plaintiff. *Barrett*, 44 F.Supp.2d at 731. Here, Knaak posted only one negative comment on Machulsky's eBay profile concerning his "bad experience", and sent email messages to her to provide shipping information and to reply to her lawsuit. (Machulsky Decl. I Ex. F; Knaak Aff. ¶¶ 7, 14).

Moreover, Knaak's negative eBay comment is significantly closer that of a passive web site than the *Barrett* defendant's actions because his comment was not disseminated actively to a group of people; rather, it was simply available to those who wished to read it. As a matter of law, his email messages are not enough to constitute purposeful availment of the privilege of acting in New Jersey.

Unlike the defendant in *Blumenthal*, found subject to personal jurisdiction because he maintained a Web site, traveled to the forum, and contacted forum residents via email, telephone, and U.S. mail, here, Knaak "never set foot in the State of New Jersey for any business or non-busi-ness purpose" (Knaak Aff. ¶ 2), and Machulsky provides no competent evidence to support her allegations concerning Knaak's alleged "numerous telephone calls" to New Jersey residents or New Jersey business partners. (Mach. Decl. I ¶ 25.) His only communication into New Jersey supported by the evidence is the email correspondence between Knaak and Machulsky.

Knaak's alleged tortious acts also fail to satisfy the effects test because, similar to the defendant in *English Sports Betting, Inc.*, whose Web site viewers shared a common interest in off-shore sports gambling, here the potential viewers of Knaak's comments shared a common interest the subject matter of Machulsky's eBay auctions—coins. The comment was posted on a national auction Web site, and the focal point of the harm was not New Jersey. The foreseeability that Machulsky might suffer harm in New Jersey also is not enough to support a finding that he expressly aimed his conduct at New Jersey. *See English Sports Betting, Inc.*, 2002 WL 461592 at \*3.

The Court finds that Machulsky makes a number of allegations regarding Knaak's contacts with New Jersey without evidentiary support[8] and that she fails to meet her burden of proof regarding her allegation of an "Enterprise," of which Knaak was purportedly a member.[9] Mere allega-

---

**8.** She alleges that Knaak has "substantial business contacts and interests in New Jersey ..." and "has sold many thousands of dollars of goods to individuals in (New Jersey)." (Machulsky Decl. I ¶ 11.) These are provided in Exhibit B, which contains comments posted by eBay members rating Knaak as an eBay seller. There is no evidence, however, that the comments were posted by New Jersey residents. In addition, she provides completed auction print-outs from eBay, which show transactions between an unknown New Jersey seller and an unknown buyer. (Machulsky Decl. I Ex. B.) Nothing indicates that Knaak took part in any of these transactions.

**9.** Exhibits G through N are presented in support of the alleged "overall scheme to defraud...." (Machulsky Decl. I ¶ 6–12.) These contain emails, postal tracking slips, postal receipts, answers to one of Machulsky's counter-claims, a complaint to a New Jersey agency, and magazine subscriptions filled out in her name. Knaak is not implicated or mentioned, however, and this evidence is therefore irrelevant to the Court's determination.

tions are not enough to meet the burden of proof. *Patterson*, 893 F.2d at 604.

Because Machulsky has not met her burden of proof in response to Knaak's Rule 12(b)(2) Motion to Dismiss for lack of personal jurisdiction, Knaak's Motion is granted.

### iii. *Defendant Hall*

 Hall also lacks sufficient internet business contacts for this Court to exercise personal jurisdiction over him. Hall's case, like Leibrandt and Knaak, is distinguishable from those in which the defendant's substantial business activities over the Internet conferred jurisdiction over the defendant. Hall engaged in a single online transaction totaling $31.00 and the Court finds that the quality and quantity of his internet business activity does not rise to a substantial level such that the Court can constitutionally exercise personal jurisdiction over him.

Machulsky fails to meet her burden of proof by presenting competent evidence of Hall's contacts through his alleged tortious activity, also failing to satisfy the effects test. She presents no evidence that New Jersey was the focal point of the harm, or that Hall targeted his conduct at New Jersey.

Hall posted a negative message on an eBay forum concerning his dealings with Plaintiff (Hall Aff. Ex. F), and sent emails to a group of individuals regarding Plaintiff's auctions, including steps to be taken in responding to the so-called "Samrus2 rip off." (Machulsky Ex. G, J.) The Court also finds his conduct comparable to the defendant in *Barrett*, where the Court did not exercise personal jurisdiction over the defendant for posting defamatory comments about the plaintiff on web sites and discussion groups.

Moreover, regarding Hall's emails to Machulsky concerning his single $31.00 transaction, his payment made through the mail, and his sending of unsolicited coin grading information, the Court finds these internet and non-internet related acts do not demonstrate purposeful availment of the privilege of acting in New Jersey. (Machulsky Decl. II Ex. P, Q.) Her allegation that Hall made "substantial communications into this state by telephone ...," (Machulsky Decl. II ¶ 12), is also not supported by the evidence.

Were the Court to assume that Hall committed an intentional tort, satisfying the first prong of the effects test, Machulsky fails to establish the second and third prongs in this case, i.e. that she felt the brunt of the harm in New Jersey, or that Hall expressly aimed his conduct at New Jersey. Similar to the defendant in *English Sports Betting, Inc.*, Hall posted a negative message and exchanged emails with other eBay users who shared a common interest in Machulsky's auctions. If anything, she may have suffered harm in her national capacity as an eBay seller, and the brunt of the harm was not suffered in New Jersey such that it could be considered the focal point of the harm. Moreover, although she provides evidence that Hall knew of her New Jersey location, the Third Circuit has held that knowledge of the plaintiff's location alone is not enough to satisfy the third prong of the effects test. *See IMO Indus., Inc.*, 155 F.3d at 266. Foreseeability is not enough to establish harm unless Hall expressly aimed his conduct at New Jersey. *English Sports Betting, Inc.*, 2002 WL 461592, at *3.

Machulsky's allegations regarding Hall are unsupported by the evidence. For instance, she alleges that Hall instructed other members of the "Enterprise" to file fraudulent complaints with New Jersey

state agencies and to contact Plaintiff's eBay bidders and potential bidders (Mach. Decl. II ¶ 13), but she provides no competent evidence that Hall played a role as "one of the main orchestrators of the enterprise." (Machulsky Decl. II ¶ 17; Ex. G, J.) [10]

Plaintiff fails to meet her burden of proof in response to Hall's Rule 12(b)(2) motion to dismiss for lack of personal jurisdiction. Because the Court has found that his internet activity does not constitute sufficient contacts with the state of New Jersey, nor does it satisfy the effects test, Hall's Motion is granted.

## V. CONCLUSION

For the above reasons, Defendants' Motions to Dismiss are granted. The Court will enter an appropriate Order.

### ORDER ON DEFENDANTS' MOTIONS TO DISMISS

**THIS MATTER** having come before the Court on separate Motions to Dismiss filed by Defendants Steven Leibrandt a/k/a busterlye ("Leibrandt"), Norman Knaak a/k/a bidoveru, and David Hall a/k/a score 900 a/k/a ("Hall"), pursuant to Fed. R.Civ.P. 12(b)(1), (2), and (6), and,

**THE COURT** having reviewed the record and submissions of the parties, and, for the reasons stated in the Court's Opinion entered herewith;

**IT IS** on this 9th day of July, 2002, hereby

**ORDERED** that the Motions to Dismiss filed by Defendants Leibrandt, Hall, and Knaak are hereby **GRANTED**; and,

**IT IS FURTHER ORDERED** that Defendants Leibrandt, Hall, and Knaak are hereby **DISMISSED** from the case as defendants.

No Costs.

---

**10.** Exhibit G contains an email from Hall to a group of individuals, some of whom are co-defendants in Machulsky's suit, which discusses Hall's efforts to contact other eBay members who were dissatisfied with Machulsky's auctions. (Machulsky Decl. I Ex. G.) Exhibit G also includes a printout from an eBay webpage listing steps to be taken to avoid being a victim of fraud. (*Id.*) Yet, there is no indication that Hall instructed or required anyone to take any action, and the eBay webpage contained in the exhibit is available to anyone. Exhibit J contains an email from Hall to the same group of individuals, and outlines steps for posting a message regarding her auctions. (Machulsky Decl. I Ex. J.) She does provide evidence of other defendants' complaints to New Jersey state agencies (*Id.* Ex. L); emails threatening legal action and physical violence (*Id.* Ex. K); and, emails contacting other eBay members, (Machulsky Decl. I Ex. N), but none of this evidence directly implicates Hall as a participant in these activities.