ACCUWEATHER, INC., Plaintiff,

v.

TOTAL WEATHER, INC.; True Weather, Inc.; Weather Solutions, L.L.C.; Secure Developer Network, Inc.; Host Master; Jon Fowler; and Mark Valentin, Defendants.

No. 4:CV–02–0006.

United States District Court, M.D. Pennsylvania.

Oct. 2, 2002.

John G. Milakovic, Harrisburg, PA, Thomas A. Beckley, Beckley & Madden, Harrisburg, PA, for Plaintiff.

Robert B. Hoffman, Tracy Zurzolo Frisch, Reed Smith LLP, Harrisburg, PA, Michael D. McClintock, McAfee & Taft, Oklahoma City, OK, for Defendants.

### MEMORANDUM

McCLURE, District Judge.

### BACKGROUND:

This case involves a determination of personal jurisdiction over nonresident defendants that operate on the Internet. Plaintiff Accuweather, Inc. is suing defendants Weather Solutions, L.L.C., Secure Developer Network, Inc., and related entities for trademark infringement. Weather Solutions and Secure Developer have been operating websites that advertise their services to anyone who visits the sites. Accuweather complains that defendants have improperly registered the domain name *totalwx.com* and have illegally used the marks "Accu–Weather" and "Total Weather" in association with a website located at the address *totalwx.com.*

Defendants move under Federal Rule of Civil Procedure 12(b)(2) to dismiss or transfer the case for lack of personal jurisdiction. According to defendants, because the websites are not sufficiently interactive with Pennsylvania users and because no defendant has the requisite ties to Penn-

sylvania, personal jurisdiction is lacking. We agree with defendants that they do not have the minimum contacts with Pennsylvania that are necessary to impose personal jurisdiction. Rather than dismiss the case, we will transfer it to the Western District of Oklahoma.

## DISCUSSION:

### I. STANDARD OF REVIEW

■ "Once it is challenged, the burden rests upon the plaintiff to establish personal jurisdiction." *General Electric Co. v. Deutz Ag,* 270 F.3d 144, 150 (3d Cir.2001) (citation omitted). A court must take "specific analytical steps" when determining whether it can assert personal jurisdiction over a nonresident defendant. *Pennzoil Products Co. v. Colelli & Assoc., Inc.,* 149 F.3d 197, 200 (3d Cir.1998). Under Federal Rule of Civil Procedure 4(k)(1)(A) (which in 1993 displaced Rule 4(e)), a federal court may exercise personal jurisdiction over a defendant in the manner provided by the law of the state in which the district court sits. The forum state in this case is Pennsylvania. Under Pennsylvania's long-arm statute, 42 Pa. C.S.A. § 5322, Pennsylvania courts may exercise personal jurisdiction over nonresident defendants " 'to the constitutional limits of the [D]ue [P]rocess [C]lause of the [F]ourteenth [A]mendment.' " *Pennzoil,* 149 F.3d at 200 (quoting *Mellon Bank (East) PSFS, National Assoc. v. Farino,* 960 F.2d 1217, 1221 (3d Cir.1992)). Accordingly, when considering Pennsylvania's long-arm statute, " '[a] court's inquiry is solely whether the exercise of personal jurisdiction over the defendant would be constitutional.' " *Renner v. Lanard,* 33 F.3d 277, 279 (3d Cir.1994).

Under constitutional principles, "[p]ersonal jurisdiction may be either general or specific." *Deutz Ag,* 270 F.3d at 150. "A defendant is subject to general jurisdiction when it has continuous and systematic contacts with the forum state." *Id.* (citing *Helicopteros Nacionales de Colombia, S.A. v. Hall,* 466 U.S. 408, 414–16, 104 S.Ct. 1868, 80 L.Ed.2d 404 (1984)). "Specific jurisdiction is established when a non-resident defendant has 'purposefully directed' his activities at a resident of the forum and the injury arises from or is related to those activities." *Id.* (quoting *Burger King Corp. v. Rudzewicz,* 471 U.S. 462, 472, 105 S.Ct. 2174, 85 L.Ed.2d 528 (1985)).

### II. STATEMENT OF FACTS

The following facts are gleaned from Accuweather's amended complaint and the affidavits accompanying the 12(b)(2) motion. The defendants named in the amended complaint are Total Weather, Inc.; True Weather, Inc.; Weather Solutions, L.L.C.; Secure Developer Network, Inc.; Host Master; and individual defendants Jon Fowler and Mark Valentin. Their respective roles in the case will be set forth below.

Weather Solutions provides software to local television news stations and weather broadcasters. The software enables broadcasters to provide breaking news and weather content to viewers through the viewers' personal computer desktops. After a broadcaster installs the software created by Weather Solutions, the broadcaster can access Weather Solutions's computer server through an Internet portal at the name *totalwx.com.* After access, the broadcaster can download or place breaking news and weather on the server. To receive this service from the broadcaster, viewers download the necessary software from the broad caster's website. The individual broadcasters independently brand, market, and provide this breaking news and information to their viewers. The individual viewers have no contractual relationship with Weather Solutions, and the viewers are given no indication that

the broadcasters are using Weather Solutions's software or domain name.

Weather Solutions operates its own website at the address *trueweather.com*. The website is a source of information concerning Weather Solutions and its services, but Weather Solutions does not transact any business through the website. Visitors to the website are unable to purchase any products or services from Weather Solutions. Visitors to the website cannot make purchases; they can only (1) download and print information concerning Weather Solutions's services; and (2) send e-mails to Weather Solutions through the website. Weather Solutions has never operated this website or any website at the domain name totalwx.com.

Weather Solutions was created on February 4, 2002, when it acquired an existing company, Secure Developer. The conduct outlined in the complaint is attributable also to Weather Solutions's predecessor, Secure Developer. On September 20, 2001, Fowler, in his capacity as an officer of Secure Developer, registered the domain name *totalwx.com*. This domain name was registered for the benefit of and use by Secure Developer for a website located at that web address. The website was substantially similar to the current Weather Solutions website, just as Secure Developer's functions were substantially similar to the current functions of Weather Solutions.

Neither Weather Solutions nor Secure Developer has any direct ties to Pennsylvania; both are incorporated and have a principal place of business in Oklahoma. Neither is licensed in Pennsylvania, neither has an office in Pennsylvania, neither has property in Pennsylvania, and neither has done business with any Pennsylvania resident or company.

Secure Developer, though, has had limited contact with Pennsylvania entities. On two occasions, representatives of Secure Developer went to Pennsylvania to meet with representatives from Pennsylvania television stations regarding Secure Developer's services. No contracts or agreements were reached.

Fowler and Valentin are both affiliated with Weather Solutions. Both are from Oklahoma and individually have no connection with Pennsylvania. Total Weather and True Weather, both of which are named as defendants, are not independent legal entities but rather are business names under which Weather Solutions and Secure Developer have done business. Host Master is a company that assists individuals and businesses with the registration of domain names and the creation and hosting of websites. It was used solely to secure the domain name *totalwx.com*.

### III. ANALYSIS

It is clear—and Accuweather does not dispute—that general jurisdiction over any defendant is lacking. No corporate entity or individual has the type of "continuous and systematic" contacts with Pennsylvania that would justify this court's assertion of general jurisdiction.

What remains is the determination of specific jurisdiction. "To make a finding of specific jurisdiction, a court generally applies two standards, the first mandatory and the second discretionary." *Pennzoil*, 149 F.3d at 201.

"First, a court must determine whether the defendant had the minimum contacts with the forum necessary for the defendant to have 'reasonably anticipate[d] being haled into court there.'" *Id.* (quoting *World–Wide Volkswagen Corporation v. Woodson*, 444 U.S. 286, 297, 100 S.Ct. 559, 62 L.Ed.2d 490 (1980)). "The issue of minimum contacts is rather fact-sensitive in that it turns on the 'quality and nature of a defendant's activity [in relation to the

forum state].'" *Id.* at 203 (quoting *Max Daetwyler Corporation v. R. Meyer,* 762 F.2d 290, 298 (3d Cir.1985)). "Nonetheless, despite the difficulty in formulating bright-line rules in this area, some basic precepts have evolved in the assessment of minimum contacts. For example, if a nonresident defendant's contact with the forum is simply 'fortuitous' or 'the result of a single transaction,' the minimum-contacts requirement has not been satisfied." Id. (quoting *Max Daetwyler,* 762 F.2d at 295). "A finding of minimum contacts demands the demonstration of some act by which the defendant purposely avail[ed] itself of the privilege of conducting business within the forum State, thus invoking the protection and benefits of its laws." Id. (citations and internal quotation marks omitted).

"[A]ssuming minimum contacts have been established, a court may inquire whether the assertion of personal jurisdiction would comport with fair play and substantial justice." *Id.* at 201 (citations and internal quotation marks omitted). Although this standard may be applied at a court's discretion, the Third Circuit generally encourages its use. Id. (citing *Farino,* 960 F.2d at 1222; *Mesalic v. Fiberfloat Corporation,* 897 F.2d 696, 701–02 (3d Cir. 1990)).

In analyzing an Internet-based defendant's minimum contacts, "[a] court must assess the nature and quality of [the] defendant's Internet activity." *Machulsky v. Hall,* 210 F.Supp.2d 531, 538 (D.N.J.2002) (citing *Barrett v. Catacombs Press,* 44 F.Supp.2d 717, 724 (E.D.Pa.1999)). "[T]he minimum contacts analysis in cases involving the Internet is conducted on a 'sliding scale,' on which the constitutionality of the exercise of personal jurisdiction is directly proportional to the level of commercial interactivity on a corporation's web site." *S. Morantz, Inc. v. Hang & Shine Ultrasonics, Inc.,* 79 F.Supp.2d 537, 540 (E.D.Pa.

1999) (citing *Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F.Supp. 1119, 1124 (E.D.Pa. 1997)). "At one end of the continuum are passive sites that merely post information that is available to anyone with access to the Internet; on the other end are highly interactive sites through which a corporation conducts business over the Internet." *Id.* (citation omitted). "The latter sites typically involve a high volume of deliberate exchanges of information through the site, including the formation of contracts." *Id.* (citation omitted). "In the middle are interactive Web sites where a user can exchange information with the host computer." *Id.* (citation and internal quotation marks omitted). "The exercise of personal jurisdiction in cases involving sites in this middle category hinges on the level of commercial information exchange that takes place on the web site." *Id.* (citation omitted).

We find particularly instructive *S. Morantz, Inc.* and another recent case from the Eastern District of Pennsylvania, *Desktop Technologies, Inc. v. Colorworks Reproduction & Design, Inc.,* No. CIV. A. 98–5029, 1999 WL 98572 (E.D.Pa. February 25, 1999).

The issue in *Morantz* was whether the defendant corporation had minimum contacts with the Commonwealth of Pennsylvania. The plaintiff was a Pennsylvania corporation that manufactured and sold machines that cleaned items such as window blinds. The defendant was a New York corporation that operated a blind-cleaning business. It operated a website and a 1(800) number. According to the plaintiff, the defendant infringed on its trademark by using on its website a woman scrubbing blinds over a tub of water. The plaintiff sued the defendant in the Eastern District of Pennsylvania.

The court found that it lacked personal jurisdiction over the defendant. In a pre-

liminary rejection of jurisdiction, the court dismissed the plaintiff's argument that the defendant's "maintenance of a toll-free number and a web site that is accessible to individuals within the state of Pennsylvania constitutes sufficient minimum contacts to subject [the defendant] to personal jurisdiction in this district." *Id.* at 540–41. It stated that "there must be 'something more' than a mere website to justify the existence of personal jurisdiction over a non-resident corporation." *Id.* at 541. It analyzed the defendant's website. The website contained a downloadable order form for a promotional video, a form by which a user could request additional information, and a link by which a user may send e-mail to the defendant corporation. The court found that these features did not add up to the requisite "something more":

> On the sliding scale of interactivity discussed above, defendant's web site is at best a middle category site. Clearly, it is not a highly interactive site through which business is conducted. Contracts and sales are not consummated through the web site, and the volume of information exchanged via the site is small. There are a few minimally interactive features on the site, including a lease application that may be printed out, but not sent over the Internet; a form through which a user may order and pay for a $10 promotional video; a form through which a user may request additional information; and an [sic] link by which a user may send e-mail directly to Hang & Shine from the site.

Upon a careful review of the record and the case law on this subject, I conclude that these web site features are not interactive enough to justify the exercise of personal jurisdiction by this Court. The presence of an e-mail link or a form for placing orders on a web site does not create the kind of minimum contacts required to establish personal jurisdiction.

*Id.* (citations and footnote omitted).

The plaintiff in *Morantz* pointed to the fact that the defendant had within previous years made various contacts with Pennsylvania entities; specifically, the defendant sold one cleaning machine to a Pennsylvania corporation, sold four videos to Pennsylvania residents, and sent five e-mails to Pennsylvania residents. The court held these transactions to be "the kind of 'fortuitous,' 'random,' and 'attenuated' contacts that the Supreme Court has held insufficient to warrant the exercise of jurisdiction." *Id.* at 543 (citing *Burger King Corp.*, 471 U.S. at 475, 105 S.Ct. 2174).

In *Desktop Technologies,* the plaintiff was a Pennsylvania corporation and the defendant was a Canadian corporation. The plaintiff owned a U.S. trademark, COLORWORKS, while the defendant owned a Canadian trademark, Color-Works. The defendant operated a website with the domain name of colorworks.com; the website was available to users in Pennsylvania. The plaintiff sued in the Eastern District of Pennsylvania and alleged trademark infringement, and the defendant raised a lack of personal jurisdiction.

The court first stated that "[c]ourts have repeatedly recognized that there must be 'something more' than simply registering someone else's trademark as a domain name and posting a web site on the Internet to demonstrate that the defendant directed its activity towards the forum state." *Desktop Technologies,* 1999 WL 98572 at *5 (citation omitted). Searching for the "something more," it noted that the defendant's presence on the Internet and an e-mail link were the only contacts with Pennsylvania, and it concluded that the largely noninteractive character of the defendant's website was such that specific personal jurisdiction was nonexistent:

Defendant's Internet presence and e-mail link are its only contacts with Pennsylvania. As established earlier, Defendant maintains the web site to advertise and post information about its services and employment opportunities. The web site does not exist for the purpose of entering into contracts with customers outside of Canada or for the purpose of attracting customers from Pennsylvania. Instead, its web site specifically states that it is servicing clients in British Columbia, Alberta and Yukon. Defendant has never entered into any contracts in Pennsylvania, made sales or earned income in Pennsylvania, or sent messages over the Internet to users in Pennsylvania. While visitors to the web site are able to exchange information over the web site via Internet FTP and e-mail, receiving a file through Internet FTP or an e-mail does not constitute placing an order. Thus, while Defendant is exchanging information over the Internet, it is not doing business over the Internet with residents of Pennsylvania. Accordingly, this Court finds that Defendant's registration of "Color-Works" as a domain name and posting a web site on the Internet are insufficient to subject Defendant to specific personal jurisdiction in Pennsylvania.

*Id.* at *6.

■ Both *Morantz* and *Desktop Technologies* dictate that personal jurisdiction in this case is lacking. We reiterate the court's statement in Desktop Technologies's that the conduct outlined in the amended complaint—that is, simply registering someone else's trademark as a domain name and posting a web site on the Internet—does not by itself demonstrate that any defendant directed its activity towards the forum state. The "something more" needed to subject any defendant to jurisdiction is not present. Each defendant, to the extent that it had any contact with Pennsylvania at all, has even less of a

connection to Pennsylvania than did the defendants in *Morantz* or Desktop Technologies. As with the website in *Morantz,* the websites owned by Secure Developer and Weather Solutions are at best middle category sites. Also, they are not interactive enough to justify the exercise of personal jurisdiction. They are purely informational. The websites lack a means for users to conduct business; the websites in the instant case—unlike the website in *Morantz*—lack even an order form for promotional materials. As with the website in Desktop Technologies, the websites' presence on the Internet and e-mail link are not enough to subject any defendant to personal jurisdiction. Further, any contact with Pennsylvania—such as Secure Developer's few meetings with Pennsylvania television stations—is even more attenuated than the "fortuitous" contacts outlined in *Morantz.* That is, the defendant in *Morantz,* for example, actually sold products to Pennsylvania residents and still the court found jurisdiction lacking. Here, Secure Developer's trips to Pennsylvania, along with any other contact with Pennsylvania, do not rise even to the level found in *Morantz* or Desktop Technologies. As a result, minimum contacts with Pennsylvania are lacking, and personal jurisdiction cannot be found.

Accuweather points to a 2001 press release that may be found on the websites. The press release lists a large number of U.S. cities that may use Secure Developer's services. The list includes four cities in Pennsylvania. Accuweather argues that the inclusion of these cities means that Secure Developer is subjecting itself to Pennsylvania jurisdiction. We reject this argument; a single press release containing potential U.S. markets is exactly the type of isolated situation that militates against the finding of personal jurisdiction.

We note that there are multiple defendants in this case. The above discussion relates primarily to True Weather and Secure Developer. If jurisdiction cannot be exercised over these two, then jurisdiction is necessarily lacking when it comes to individual defendants Fowler and Valentin and corporate entities Total Weather, Weather Solutions, and Hostmaster. As the affidavits make clear, the individual defendants have no contact with Pennsylvania, and the remaining corporate entities are for the most part names under which True Weather and Secure Developer operate, and they otherwise have no connection to Pennsylvania.

Accuweather requests in the alternative that we allow discovery on the jurisdictional issue. "[T]he decision of whether or not to permit jurisdictional discovery is a matter committed to the sound discretion of the district court." *Base Metal Trading, Ltd. v. OJSC Novokuznetsky Aluminum Factory,* 283 F.3d 208, 216 n. 3 (4th Cir. 2002). Accuweather provides us with no basis to believe that discovery would change our opinion. Thus, its request for discovery will be denied.

Moreover, in its brief Accuweather does not contest defendants' request to transfer the case to the Western District of Oklahoma. If a district court finds that jurisdiction is lacking, "it shall, if it is in the interest of justice, transfer [the action] to any other such court in which the action ... could have been brought at the time it was filed." 28 U.S.C. § 1631. Both individual defendants reside in Oklahoma, and the Internet activities are based in Oklahoma. This action could have been brought in the Western District of Oklahoma, and it is in the interests of justice to transfer the case rather than dismiss it; accordingly, the case will be transferred to the Western District of Oklahoma.

*CONCLUSION:*

Because no defendant has the requisite minimum contacts with the Commonwealth of Pennsylvania, this court lacks personal jurisdiction over each defendant. Because it is in the interests of justice, we will not dismiss the amended complaint, but we will transfer the case to the Western District of Oklahoma.

## *ORDER*

For the reasons set forth in the accompanying memorandum,

**IT IS ORDERED THAT:**

1. Defendants' motion to dismiss for lack of personal jurisdiction or in the alternative to transfer venue to Oklahoma (Rec. Doc. No. 13) is granted.

2. The clerk is directed to transfer the case to the United States District Court for the Western District of Oklahoma.

3. The clerk is directed to close the case file.